Zimmerman, J.
The power of eminent domain is the power of the nation or a sovereign state to take, or to authorize the taking of, private property for a public use without the owner’s consent, conditioned upon the payment to the owner of just compensation. By Section 1208, General Code (Section 5537.06, Revised Code), the General Assembly has authorized and empowered the Ohio Turnpike Commission to appropriate private property for turnpike construction, upon the terms therein prescribed.
The controlling question in both the appropriation proceedings now under consideration is whether Ellis did, in fair trials, receive just compensation for his lands actually taken and whether the damages to his remaining adjacent lands were fairly assessed.
On his appeal to the Court of Appeals in cause No. 34430, Ellis, in his assignment of errors, claimed the commission of 11 errors by the trial court. Out of this number a majority of the Court of Appeals found five which, in its opinion, were prejudicial to Ellis and upon such basis reversed the judgment below and remanded the cause for a new trial. These five errors were as follows:
1. Error in excluding from the evidence the prepared plans and specifications for apartment houses proposed to be built on the land affected, and the fact that an application for Federal Housing Administration financing to consummate such purpose had been made.
2. Error in admitting a financial statement which it was claimed Ellis had prepared and submitted in 1951 in connection with a divorce action then pending between him and his wife, and in which statement Ellis had placed a valuation on the lands in controversy considerably lower than the amount claimed in the appropriation proceeding.
3. Error in permitting Charles G. Schenck, an expert witness for the commission, to testify as to the value of the land in controversy, where, as a part of his investigation and by reference to the revenue stamps attached to recorded deeds, he had obtained information as to the prices for which comparable properties had been sold.
4. Error in admitting in evidence the price at which the *381 commissioners of Lucas County had sold under sealed bids an eight-acre tract of land in proximity to the Ellis land in controversy.
5. Error in refusing to grant a new trial for the misconduct of a juror.
As to the first error noted, the construction of the apartment buildings was but a contemplated project which might never have materialized, and, although the admission of the plans and specifications in evidence would not be subject to serious objection, their exclusion did not constitute reversible error, particularly in view of the fact that, in testifying as to the most valuable uses to which the Ellis land might be put, the witnesses fully described its availability and adaptability for multiple dwellings and commercial buildings and gave their opinions as to the value of the land, based upon such uses as well as other similar uses.
Also, the court in its general charge told the jury that in its determination of the value of the land appropriated it should take into account its worth for any and all uses to which it might be suitable, including the most valuable uses to which it could reasonably and practically be devoted. Such instruction was in line with what was said by this court in the case of In re Appropriation by Supt. of Public Works, 155 Ohio St., 454, 99 N. E. (2d), 313.
As to the second error noted, in 1951 a divorce action was pending between Ellis and his then wife. In connection with this litigation, counsel for Mrs. Ellis requested a statement showing what property Ellis owned and its value. Such a statement, detailing assets and liabilities, was furnished by one of Ellis’ attorneys, who occupied the same office with him. Ellis was obviously aware of such statement, its contents and its purpose, because he admitted having discussed the subject with Mrs. Ellis’ attorney.
On the trial, the attorney who had represented Mrs. Ellis in the divorce case was called as a witness by the commission and was questioned about the statement. It was produced by him and was offered and received in evidence as an exhibit. Such statement set forth the appropriated land in issue with a valuation which was a good deal lower than that claimed by Ellis in the appropriation proceeding.
*382 It would seem apparent that such a financial statement may not be regarded as a privileged communication, the general rule being that communications made to one’s attorney with the knowledge and understanding that they are to be conveyed by him to others are stripped of the idea of a confidential disclosure and are therefore not privileged.
We are further of the opinion that such financial statement, made within a comparatively short time before the appropriation proceeding was begun, was properly admitted in evidence as constituting a declaration or admission against interest as to Ellis and as bearing on the weight and credibility to be accorded his claim as to the value of his land at the time of the appropriation.
As to the third error listed, Charles G. Schenck of Columbus, Ohio, was called as a witness by the commission. He qualified himself as an expert of long and extensive experience in appraising and evaluating all kinds of real property in different parts of Ohio. He testified that he spent seven full days in making a thorough investigation and study of the Ellis land, including inquiries of those familiar with real estate values in Lucas County and an inspection of the Ellis land. According to his testimony he took into account every pertinent factor bearing upon value which embraced the highest and best practical uses to which the property might be put. True, Schenck did note the revenue stamps on deeds conveying adjoining and nearby properties to ascertain the prices for which they had been sold, but from the examination of his entire testimony it is clear that this was but a single factor in the leaching of his opinion as to the value of Ellis’ appropriated lands.
In Ramming Real Estate Co. v. United States (C. C. A., 8), 122 F. (2d), 892, 895, an appropriation proceeding brought by the United States, the court had the following to say concerning the testimony of a -witness who expressed his opinion as to the value of the land there appropriated:
“ * * * He also took into consideration the revenue stamps which were affixed to the deeds. These were attached pursuant to federal statute, the violation of which is made a crime. With this sanction, we think the amount of revenue stamps attached to the deeds may be said to have been a réliable source of in *383 formation as to the amount of the consideration paid for the property described therein. Here, again, the argument is one that may well have been addressed to the jury as affecting the weight of the testimony, rather than going to its admissibility. We think there was no abuse of discretion in admitting this testimony which the witness said he had taken into consideration in arriving at the fair market value of the property in controversy.”
There was much testimony of a conflicting nature as to the value of Ellis’ appropriated lands. Naturally the trial judge has a good deal of discretion in admitting or excluding evidence of this kind, and, where such discretion has not been patently abused, a reviewing court should be slow to interfere. G-enerally, testimony as to the value of appropriated lands, the qualifications of the witnesses who testify as to value, the means whereby they arrived at the figures given, and their sources of information go to the weight of the testimony rather than to its admissibility.
A thorough examination of the bill of exceptions convinces us that the trial court did not commit reversible error in its admission and exclusion of the evidence discussed above and relating to the value of Ellis’ land. The jury was presented with a wide variety of evidence touching value, and it was its province to weigh such evidence, to estimate the qualifications and the credibility of the witnesses and to arrive at such value as it considered fair and proper.
As to the fourth error noted, relating to the admission in evidence of the price at which the commissioners of Lucas County had sold under sealed bids eight acres of land comparable to the Ellis land, we see nothing particularly pernicious about receiving such evidence. A majority of the Court of Appeals seems to have taken the position that such sale by the county commissioners was equivalent to a forced sale or a sale at public auction and that such evidence was therefore inadmissible. It appears that the Board of County Commissioners, which held title to the eight acres and wished to sell the same, requested sealed bids in a notice published for four consecutive weeks and which contained the reservation of the right “to reject any and all bids for the purchase of such real estate.”
*384 This was hardly a “forced sale” because as we understand that term it means a sale which the vendor must make immediately without the time or opportunity to find a buyer who will pay a price representing a sum approaching the reasonable worth of the land sold.
And according to the statement in 31 Corpus Juris Secundum, 886, Evidence, Section 182, the price obtained at a voluntary auction of land is ordinarily admissible in evidence as having a bearing on the true value of the land.
We are of the opinion that, had the trial court rejected the evidence as to the price at which the county commissioners sold the eight acres in question, no error would have been committed, but on the other hand it is our view that the admission of such evidence did not constitute reversible error.
We how come to error No. 5, which is concerned with the refusal of the trial court to order a new trial for the misconduct of a juror. In attempting to secure a new trial, Ellis produced two witnesses, fellow employees of one of the jurors in a manufacturing plant. In response to inquiries made by them the juror said to one, according to the witnesses’ testimony: “What we are now on is the Ellis case. * * * It’s just a man that owns some property out here where Detroit crosses the trail. * # # His appraisers — has appraised it. * * * The Turnpike Commission doesn’t think it’s worth that much. ’ ’
To the other fellow employee, the juror is alleged to have remarked, among other things: “It was just a matter for the jury to decide how much was paid for the property to begin with, and whether or not Mr. Ellis was trying to profiteer.”
Of course, the latter remark attributed to the juror was highly improper and indiscreet but was it so serious and of such gravity as to require the granting of a new trial?
In considering this matter four propositions are to be borne in mind.
1. No agent, attorney or representative of the commission induced the juror’s statements or had any knowledge of them.
2. No opinion was expressed by the juror as to the merits of the case or as to how he would vote in the deliberations of the jury.
3. The verdict was signed by all 12 jurors.
*385 4. There was no showing that the statement attributed to the juror was communicated to any other juror, that such remark influenced the verdict of the jury, or that the juror did not follow the instructions of the court in considering the case.
In a situation of this kind, much must be left to the sound discretion of the trial court, and where no deliberate abuse of discretion is plainly indicated the trial court’s disposition of the matter should stand.
Appropriate here are the following remarks contained in the opinion in the case of Armleder v. Lieberman, 33 Ohio St., 77, 83, 31 Am. Rep., 530:
“To arrest from a party a verdict, which appears to have been honestly obtained, after long and expensive litigation, merely because a juror has been so indiscreet as to speak of the case to a stranger, when he could have received no advantage from that improper act of the juror, and the opposite party no prejudice, would be scarcely compatible with the due administration of judicial justice. When, however, the prevailing party, or his agent or friend, has approached a juror during the trial, or while he has the case under consideration, and addresssed the juror on the subject of the action, the verdict should be set aside. He should be made, in that way, to fee] the punishment of violated law. ’ ’
Compare Steiner v. Custer, 137 Ohio St., 448, 31 N. E. (2d), 855, and Pearson v. Gardner Cartage Co., Inc., 148 Ohio St., 425, 446 et seq., 76 N. E. (2d), 67, 76.
We think the majority of the Court of Appeals was wrong in reaching the conclusion that Ellis was entitled to a new trial because of the misconduct of a juror.
We now come to a consideration of cause No. 34431, which in many of its aspects is quite similar to cause No. 34430. Common to both is the refusal of the trial court to admit in evidence plans and specifications for structures which were merely in prospect and might never materialize; the admission in evidence of Ellis’ financial statement, including the valuation of the land in controversy, which was prepared and submitted to counsel for Mrs. Ellis during the pendency of a divorce action between the Ellises; the admission of the testimony of an expert on real estate values, who, in estimating the values *386 of the Ellis lands appropriated, took into account as one factor the sale price of adjacent lands as indicated by revenue stamps attached to deeds; and the admission in evidence of the amount received by the county commissioners for comparable land, the sale being effectuated by resort to the method of sealed bids. Since these questions have been discussed and passed on in our consideration of cause No. 34430, we shall say no more about them.
Three new questions are peculiar to cause No. 34431. They relate to the exclusion and limitation of testimony and to the alleged misconduct of one of counsel for the commission in his opening statement to the jury.
Was it reversible error for the trial court to refuse to allow Kenneth C. Welch of Grand Rapids, Michigan, a witness called by Ellis and who is an architect, city planner and a consultant primarily on commercial areas, to testify as to his estimate of the value of Ellis’ appropriated land?
This witness was permitted to testify extensively as to the adaptability of Ellis’ “Storer Field” property for a regional shopping center, but when it became apparent that he was neither a real estate broker nor an appraiser and had a limited knowledge of the value of real estate in the Toledo area, the court declined to let him testify as to his valuation of the appropriated land.
Most of the cases hold that the qualification or competency of a witness to testify as an expert or to give his opinion on a particular subject rests with the trial court, and, on appeal, its rulings with respect to such matters will ordinarily not be reversed unless there is a clear showing that the court abused its discretion. 5 Corpus Juris Secundum, 502, Appeal and Error, Section 1604, and note (1); 3 American Jurisprudence, 535, Section 975; annotation, 166 A. L. R., 1067.
In our view, the above rule is applicable here, and the court acted within its prerogatives in ruling as it did. Besides, the testimony Welch would have given as to value would have been cumulative. Other witnesses called by Ellis were allowed to give their opinions on this subject and their testimony was favorable to Ellis’ contentions.
Nor do we think the trial judge erred when he advised the *387 jury that Ellis’ testimony as to the value of his appropriated land, based upon its adaptability for the construction of a shopping center, should be considered as testimony of an owner of real estate rather than that of an expert. Ellis had never built a shopping center for himself or for anyone else and what knowledge he had on the subject was confined to information imparted to him by others.
In his opening statement to the jury, one of counsel for the commission related what the evidence would show in regard to Ellis’ ability legally to secure a right of way over the tracks of a railroad which traversed his land. Under the conditions which existed such remark was probably incorrect and erroneous. No objection, however, was taken to it at the time it was made. At a later date one of Ellis’ counsel claimed misconduct in the making of the statement and moved the court “for mistrial and withdrawal of a juror.” Such motion was overruled.
Conceding that the statement referred to was incorrect and that the court should have, upon request, eliminated it from the consideration of the jury, there is no indication that it was malicious or deliberately made. We do not think it was of such a serious or consequential nature as to require the drastic course of declaring a mistrial. The strong probabilities are that the jury gave this matter little, if any, attention.
Ellis has belatedly filed in both causes Nos. 34430 and 34431 cross-assignments of error and accompanying briefs wherein he calls attention to other errors occurring in the trial of both causes, which he claims were prejudicial to his rights and entitled him to new trials. See paragraph eight of the syllabus of Clark, v. Stewart, 126 Ohio St., 263, 185 N. E., 71.
We consider most of the errors complained of as inconsequential and of no controlling significance. They relate generally to the admission and exclusion of evidence, errors of omission and commission in the court’s charge, abuse of discretion in limiting the time for final argument to the jury to one and one-half hours to each side, and the claim that the judgments rendered by the Court of Appeals were not final and consequently not appealable.
There is one question, however, which Ellis raises in his cross-assignment of error which is worthy of discussion. This *388 relates to the admissibility in evidence of the price which Ellis paid for the real property involved several years prior to the institution of the appropriation proceedings.
We agree with the Court of Appeals that such evidence was admissible.
The decided weight of authority supports the proposition that evidence as to the price paid by the owner for property which it is desired to appropriate is admissible as bearing on its value at the time it is taken, providing the purchase was not made so long before the appropriation as to afford no fair measure of present value. 29 Corpus Juris Secundum, 1267, Eminent Domain, Section 273; 18 American Jurisprudence, 994, Section 351; Thornton v. City of Birmingham, 250 Ala., 651, 35 So. (2d), 545, 7 A. L. R. (2d), 773.
Again, much must be left to the discretion of the trial court in the matter of admitting or rejecting evidence relating to the value of appropriated property. Evidence of this character generally goes to the weight of the evidence rather than to its admissibility. Foster v. United States (C. C. A., 8), 145 F. (2d), 873, 875.
These two appropriation proceedings were long and costly affairs. We have examined the voluminous records in both cases, and it is our opinion that the juries had before them a complete picture of the whole situation, and that, acting as appraisers of Ellis’ property actually taken and of the damage done to the remainder by reason of the construction of the turnpike through it, they, the juries, were able to and did fix fair, if not liberal, valuations in the respects mentioned.
Of course, any owner who is involuntarily deprived of his property by an appropriation proceeding should be accorded just and adequate compensation for his loss, but that does not mean that the appropriator should be penalized by requiring it to pay a greater sum than the true value of the property taken, considering all proper and pertinent factors.
We recognize that errors were no doubt committed by the trial court during the progress of the proceedings. But we do not consider them of such a serious, prejudicial or pernicious nature as to require or warrant a reversal of the judgments of that court.
*389 The dissenting judge in the Court of Appeals applied the .part of Section 2309.59, Revised Code, which recites that no judgment shall be reversed by reason of errors or defects in the proceedings, where such errors or defects do “not affect the substantial rights of the adverse party.” We think he was justified in doing so.
Therefore, the judgments of the Court of Appeals in both causes Nos. 34430 and 34431 are reversed, and the judgments of the Court of Common Pleas in such causes are affirmed.

Judgments reversed.

Weygandt, C. J., Matthias, Hart, Stewart and Bell, JJ., concur.
Taet, J., concurs in paragraphs three, four, five, six, seven, eight and nine of the syllabus and in the judgment.