DOROTHY M. PORTER, Appellant, v. GUY A. THOMPSON, Trustee, MISSOURI PACIFIC RAILROAD COMPANY.—No. 40263.—206 S. W. (2d) 509.

Division One, November 10, 1947.

Rehearing Denied, December 8, 1947.

*Frank Wolff* and *James A. Riley* for appellant.

32

*Thomas J. Cole, Oliver L. Salter* and *Ragland, Otto, Potter & Embry* for respondent.

[510] BRADLEY, C.—February 6, 1945, William Robinson, a private watchman of respondent, shot and killed plaintiff's husband, Ewell Grant Porter, and plaintiff filed this cause against Robinson and respondent to recover $10,000 for the alleged wrongful death of her husband. At the close of plaintiff's case the trial court, on motion, directed a verdict for respondent and the jury returned a verdict

against Robinson for $6,500. Robinson did not appeal, but plaintiff appealed from the judgment of dismissal as to respondent.

At the time Robinson shot plaintiff's husband he (Robinson) was stationed at the Biddle Street (St. Louis) freight house of respondent; his territory was the freight house and the adjacent yards, and his hours were from about 6 P. M. to 6 A. M. The Cantoni restaurant was about 3 blocks from these yards, and Robinson frequently visited this restaurant. The proprietor of the restaurant was Andrew Cantoni.. Helen Rogaschnik, a sister of Cantoni's wife, worked in the restaurant. Robinson became infatuated with Miss Rogaschnik; wanted to marry her. Plaintiff's husband was a long distance truck driver and also frequently visited this restaurant; knew Miss Rogaschnik. Robinson became jealous of Porter and about 10 P. M., February 6, 1945, he, without warning, shot Porter 3 times in the back while Porter was seated at the bar in the restaurant. After shooting Porter he turned on Miss Rogaschnik and shot her, but she survived. Robinson was adjudged insane after the shooting and at the time of the trial was in the asylum, and was represented at the trial by a guardian ad litem.

Plaintiff sought to hold respondent liable for her husband's death on the theory that Robinson was a man of vicious propensities, violent temper, quarrelsome; without control of his passions, dangerous, and an unfit person to have such a position as private watchman and go around with a pistol, and that respondent knew, or by the exercise of ordinary care could have known that Robinson was an unfit person for the position of private watchman in time to have removed him from such position before he shot and killed plaintiff's husband.

Plaintiff's evidence showed that Robinson was at the Cantoni restaurant frequently during the hours he was on duty as watchman for respondent; that he was always armed with a pistol carried in a scabbard; that he was somewhat careless with the pistol; frequently placed it on the bar; that on occasions he would walk about in the restaurant looking like he was mad; that he wanted to overtalk to the waitresses, but Miss Rogaschnik was his favorite. He gave her large tips, on one occasion a hundred dollar bill; posed as a "big shot" and on some occasions was rude and threatening to customers and to Mrs. Cantoni. He had been deputy sheriff in Arkansas, and boasted that he had killed two people in Arkansas, and talked about the nicks on his gun to represent these killings, but he had not killed anyone. There were some other incidents pertaining to Robinson, but it is not necessary to further detail.

The police were notified of Robinson's conduct in the restaurant, but respondent was not. Theodore Brownslow, also a special agent of respondent and supervisory officer of Robinson, was in the restaurant on one occasion with Robinson, but on that occasion there was

no out of order conduct on the part of Robinson. Three or four months prior to the shooting of plaintiff's husband, Robinson, while on duty and on respondent's premises, and without cause, drew his gun on Ed Malone, a janitor for a car loading company, and threatened to blow his brains out. Malone reported this to his (Malone's) boss and *guessed* that "he (the boss) reported it to the Missouri Pacific." Also, it was shown that Robinson [511] did not have a private watchman's license from the police commissioners of St. Louis to act as a private watchman and to so act without such license was in violation of a city ordinance. But it appeared that Robinson came from Little Rock, Arkansas, recommended to respondent, and it appeared that in order to be licensed as a private watchman, an applicant, among other qualifications, had to be a resident of St. Louis for three years and a registered voter.

 Respondent contends that plaintiff did not make a sufficient showing as to the alleged vicious propensities of Robinson and his employment by respondent to make an issue on the alleged negligence of respondent in employing and retaining him as a watchman and thereby authorizing him to go armed. It is conceded that Robinson was not on respondent's premises when he shot and killed plaintiff's husband, and that he had no duty to respondent to discharge at the Cantoni restaurant. In plaintiff's brief her contention is stated as follows:

"It is appellant's theory that it became a question of fact for the jury as to whether respondent, Guy A. Thompson, trustee for the Missouri Pacific Railroad Company, a corporation, was negligent, when she introduced evidence that William Robinson was in the employ of respondent when he shot and killed her husband; that it was during Robinson's working hours; that he was employed as a private watchman without a license from the board of police commissioners of the City of St. Louis, Missouri; that he was carrying a gun on his person; that he was a man of vicious propensities and later declared insane; that he was in the habit of coming in or passing through the restaurant with a gun on his person, where the shooting took place, almost every hour during the time he was on duty, exhibiting vicious propensities to persons in said restaurant and the employees of same and with actual or constructive notice on the part of respondent."

Assuming without deciding that the evidence tended to show Robinson's propensities were as plaintiff contends, that alone would not make respondent liable. In the excerpt from plaintiff's brief it will be noted that it is stated that respondent had actual or constructive notice of Robinson's conduct in the restaurant, but that statement is not supported by the evidence. Robinson was not on respondent's premises when he shot plaintiff's husband and there is no claim that he was acting within the scope of his employment. In the brief respondent says: "It would be difficult, if not quite impossible, to

imagine a more decided departure by a servant, from his employer's business, than was Mr. Robinson's departure from respondent's business when he, Robinson, shot Mr. Porter. It is undisputed in the record that the shooting occurred in a restaurant two or three blocks away from the premises which Mr. Robinson was employed to watch for respondent; that respondent had no business, and consequently Mr. Robinson had no duties to perform for respondent at said restaurant.''

Plaintiff says that the trial court erred in directing a verdict for respondent: (1) Because, under the evidence, it became a question of fact as to whether respondent used reasonable care in employing Robinson and thereafter retaining him; (2) because it became a question of fact, under the evidence, as to whether negligence can be imputed to respondent for employing an unlicensed watchman; (3) because it became, under the evidence, a question of fact as to whether the custom of Robinson, while on duty, to leave the railroad property and go to the restaurant armed with a revolver was with the knowledge and consent of respondent; and (4) because, under the evidence, it became a question of fact as to whether the death of plaintiff's husband was the natural and probable result of respondent's negligence. Able counsel cite no authority that would support submission, as to respondent, under the facts here.

''A master is responsible for injury occasioned to a third person by any negligence or misconduct of which his servants are guilty while acting within the scope of their employment.'' 6 Labatt's Master & Servant, Sec. 2224; Rohrmoser v. Household Finance Corp., 231 Mo. App. 1188, 86 S. W. (2d) 103, l. c. 105; Oganaso v. Mellow et al., 356 Mo. 228, 201 S. W. (2d) 365. ''The general rule is that the maxim, respondeat (superior), applies when the servant, in the line of his employment about his master's business, seeks to accomplish his master's [512] purposes and in doing so acts negligently, or wilfully and maliciously, or even contrary to his orders or criminally, in some instances. That general rule is hornbook doctrine and beyond dispute. The difficulty is in applying it to the circumstances and facts of each particular case; for it would be intolerable to hold the master liable when his servant was pursuing his own ends for his own purposes, and not the master's, and in doing so commits a wrong. The employer of men would be in hard lines if that were the law.'' Whiteaker v. Chicago, R. I. & P. R. Co., 252 Mo. 438, l. c. 458, 160 S. W. 1009, l. c. 1014; Rohrmoser v. Household Finance Corp., supra.

Under the law it is quite clear that plaintiff did not make a submissible case under the rule of respondeat superior. Did she make a submissible case on the theory that respondent was negligent in employing a watchman of vicious propensities and that such negligence

was the proximate cause of the death of plaintiff's husband? As above stated, if it be assumed that Robinson was of vicious propensities, that alone would not make respondent liable. The burden was on plaintiff to show that respondent knew or should have known of Robinson's propensities, and there was no substantial evidence tending to so show. In fact, there was no evidence at all to so show. A demurrer to the evidence (motion for a directed verdict) admits the truth of the evidence to which the demurrer is directed, and also admits all inferences of fact which a jury might fairly draw from that evidence; and such demurrer can only be sustained when the facts in evidence and the fair inferences to be drawn from such facts are so strongly against the party at whom the demurrer is directed as to leave no room for reasonable minds to differ. Goslin v. Kurn et al., 351 Mo. 395, 173 S. W. (2d) 79, 1. c. 84, and cases there cited. But in the present case there was no substantial evidence to support submission as to respondent, hence the directed verdict was proper.

No purpose could be served by further discussion. The judgment should be affirmed and it is so ordered. *Dalton* and *Van Osdol, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted, as the opinion of the court. All the judges concur.