Jane STRAUSS, Plaintiff-Appellant,

v.

HOTEL CONTINENTAL COMPANY, INC., Kansas City Athletic Club, and Missouri Institute of Technology, Inc., Defendants-Respondents.

No. WD 31093.

Missouri Court of Appeals,
Western District.

Dec. 2, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 30, 1980.

Application to Transfer Denied
Feb. 9, 1981.

Robert J. Graeff, James T. Cook, Michael W. Manners, Independence, for plaintiff-appellant.

Wiley W. Morrison, Stanley W. Baker, Raytown, for defendant-respondent Missouri Institute of Technology, Inc.

Walter R. Simpson, Kansas City, for defendants-respondents Hotel Continental Co., Inc., and Kansas City Athletic Club.

Before WASSERSTROM, C. J., Presiding, and DIXON and SOMERVILLE, JJ.

WASSERSTROM, Chief Judge.

Plaintiff sues for an assault allegedly committed by a student of defendant Missouri Institute of Technology, Inc., ("MIT"), who was employed by defendant Kansas City Athletic Club ("KCAC"), on premises which are located in the building of defendant Hotel Continental Company, Inc. ("Continental"). The jury verdict was in favor of all defendants, from which plaintiff appeals. We affirm.

KCAC is a private club which leases space and operates athletic facilities in the Continental building. It regularly required locker room attendants, and from time to time it notified MIT of its need to hire a new attendant. The student body at MIT is made up of students who need part time work, and MIT as a regular part of its procedure undertakes to help its students in that regard. When a prospective employer sends in notice of an opening, the school prepares a card with the pertinent information which is posted for consultation by students needing work.

In early April 1976, Dwight Couch, an MIT student, applied for work at KCAC. He was interviewed and hired by Wayne Berry, Manager of KCAC, who died prior to trial. Couch testified that during his interview by Berry, Berry inquired about his past history and Couch informed Berry where he had gone to high school, about his service in the Marine Corps and his honorable discharge therefrom, and about the jobs at which he had "been working ever since I got out of the service" up to the time he enrolled at MIT. Couch made no disclosure about his criminal conviction for assault with intent to rape with malice afore-

thought or of the time spent by him in the penitentiary pursuant to that conviction.

On April 3, 1976, Couch reported for work at KCAC. At that time he was given $5.90 and told he would have to go to the City Hall to obtain a liquor permit which he would have to have in order to serve beer to members using the locker room.

Couch testified that he did go to the City Hall to make application for a liquor permit, but that was denied when he showed on his application that he had been previously convicted of a felony. Couch returned to work at KCAC without telling anyone there about the denial of his application for a permit or the reason for the denial. He kept the $5.90.

On April 17, 1976, plaintiff came to Kansas City as one of the actresses in the traveling production of Godspell. She registered as a guest at Continental and learned that as a guest she was entitled to use the KCAC facilities. That afternoon she went to the KCAC facilities about 5:30 p.m. She met Couch at that time, who told her the Club was about to close but that she could go swimming. She did swim, after which she had some conversation with Couch who showed her through the facilities and permitted her to use the jogging track. Couch then suggested that he would be at the Club studying later during the evening and that if plaintiff and her friends wanted to swim after the performance of Godspell, he would permit them to do so and that they then could go out to one of the City's places of entertainment. Plaintiff stated that she would let Couch know.

Later that night after the theatrical performance, plaintiff went back to the KCAC premises and told Couch that she had a headache and did not desire to swim. Couch offered her a soft drink, which plaintiff accepted. However, plaintiff complained that the place in which they found themselves was drafty and Couch suggested that they go to a card room further back in the premises. Plaintiff agreed to do so. While they were in the card room, Couch approached closer in a manner which aroused apprehension on plaintiff's part.

She excused herself and turned to leave. As she was passing through the locker room, she was struck on the head from behind. In the grapplings that followed, she was able to see her assailant whom she identified as Couch. She was able to break away and got downstairs to the first floor by elevator. Couch was arrested and charged with assault. He stated at the time of his arrest and has consistently contended since that it was not he who made the assault but some other unidentified "dude" who came out from between the lockers.

For her points on appeal, plaintiff complains: (1) that the trial court improperly excluded for purposes of impeachment evidence that Couch had been convicted of assaulting plaintiff; (2) that the trial court improperly excluded the testimony of witness Lovan who would have testified that Berry talked to one of the officials at MIT about the necessity of the locker room employee having a "clean record" so that he could obtain a liquor permit; and (3) that the trial court erred in submitting a jury instruction permitting a finding that plaintiff was contributorily negligent. All defendants argue that these alleged trial errors are immaterial for the reason that the evidence made no submissible case against any of the defendants. In that connection, MIT and Continental point out that the trial court, with respect to their motions for directed verdicts stated, "I have no reason to believe that a submissible case has been made against either of those defendants. * * * I'm going to deny each of the motions with the understanding that if a verdict is secured against you, that I will sustain them subsequent to a motion for judgment notwithstanding that verdict."

■ Not only was the trial court correct in the foregoing observation, but additionally it must be concluded that no submissible case was made against defendant KCAC. Under those circumstances, any trial error is immaterial and need not be considered. *Branstetter v. Gerdeman*, 364 Mo. 1230, 274 S.W.2d 240 (1955); *R. H. Macy & Co. v. Bell*, 531 S.W.2d 58 (Mo.App.1975).

## I.

As to Continental, plaintiff pleaded causes of action for assault,[1] for negligence in hiring Couch, for negligence in providing safe premises, and for negligence in failing to comply with state and city liquor regulations. However, the only instruction submitted against Continental was on the theory that Continental "did not provide and maintain a safe premises for Plaintiff to use." That submission was based upon and further defined by the allegation in Count Three of plaintiff's petition in which she alleged that defendants Continental and KCAC "negligently and carelessly failed to keep all doors and methods of entry locked to avoid and prevent access and entrance by uninvited trespassers" and that by reason thereof plaintiff was assaulted "by an unknown and uninvited trespasser who gained entry and access to said premises through said unlocked door."

■ By electing to go to the jury against Continental on that sole theory, plaintiff abandoned all of her other pleaded theories as to Continental, and those theories not submitted are not before this court for consideration. *Krinard v. Westerman*, 279 Mo. 680, 216 S.W. 938 (1919); *Weathers v. Falstaff Brewing Corporation*, 403 S.W.2d 663 (Mo.App.1966); *Johnson v. Thompson*, 236 S.W.2d 1 (Mo.App.1950); *Whited v. Guarantee Trust Life Ins. Co.*, 237 S.W.2d 915 (Mo.App.1951).

■ Plaintiff faces an insurmountable obstacle with respect to her submitted theory in that she herself testified that Couch, not some unknown trespasser, committed the assault. With exceptions not here applicable, a party is bound by his own testimony. *Burks v. Leap*, 413 S.W.2d 258 (Mo. 1967); *Peoples Finance Corporation v. Buckner*, 344 Mo. 347, 126 S.W.2d 301 (1939); *Euler v. Schulthes*, 522 S.W.2d 155 (Mo.App.1975); *Thaller v. Skinner and Kennedy Company*, 307 S.W.2d 734 (Mo.App. 1958). Inasmuch as plaintiff's own testimony contradicts the theory upon which she submitted her case against Continental, that submission was unsupported and should not have been tendered.

## II.

■ Although plaintiff pleaded that KCAC was responsible for the acts of its employee Couch under the doctrine of respondeat superior, she submitted no instruction to the jury on that theory. There was good reason for not doing so, because the doctrine of respondeat superior clearly does not apply under the facts of this case in that Couch was not acting within the scope of his employment, but rather was pursuing his own ends for his own purposes at the time of the assault upon plaintiff. *Smothers v. Welch & Co. House Furnishing Co.*, 310 Mo. 144, 274 S.W. 678 (1925).

Plaintiff did, however, submit against KCAC on an alternative theory that KCAC had been negligent in the manner in which it selected and hired Couch. This was the only theory of liability against KCAC submitted by plaintiff to the jury.

KCAC challenges whether Missouri recognizes a cause of action premised upon such allegations of negligent hiring. There is, in fact, a conflict of authorities throughout the country as to whether an employer can be liable to a third party under such theory. 53 Am.Jur.2d Master and Servant Sec. 422, p. 435 (1970). KCAC seeks to align Missouri with those decisions which decline to recognize this concept, and in support it cites *Priest v. F. W. Woolworth Five & Ten Cent Store*, 106 S.W.2d 936 (Mo.App.1937). That opinion would seem to deny plaintiff any right of recovery here.

■ Notwithstanding the opinion just cited, the Missouri authorities should be read as being in line with the majority view which recognizes negligent hiring as providing a basis for recovery against the employer. The earliest Missouri case bearing on this subject is *Smothers v. Welch & Co. House Furnishing Co., supra*, where a cus-

---

**1.** This set of allegations assumed that Couch acted as an employee of Continental in the assault on plaintiff. As an aside, the evidence gives no indication that Continental had any part in hiring Couch or that it had any right of supervision or control over him.

tomer brought suit against an employer to recover damages under the doctrine of respondeat superior because of an attempt by defendant's employee to rape her. The court denied recovery on the ground that the acts of the employee were not within the scope of his employment. In the course of the opinion, however, the court remarked that an employer's duty "doubtless includes the duty of using ordinary care to employ competent and law-abiding servants."

Then in *Priest v. F. W. Woolworth Five & Ten Cent Store*, 228 Mo.App. 23, 62 S.W.2d 926 (1933), the Springfield Court of Appeals had for consideration a suit by a customer to recover damages for an assault upon her by defendant's employee. The court held that the employee's act of bending the plaintiff backward over a counter was not within the scope of his employment so as to render the defendant employer liable for the assault. However, the court remanded the case for retrial for the following reason:

"There was some evidence in this case that George was notoriously guilty of similar acts of 'playfulness' prior to the time of this accident. We think if there is any basis of liability in this case it must be on the theory suggested in plaintiff's brief and in the *Smothers Case*, supra, i. e. failure of defendant to exercise ordinary care in employing a proper servant. For that reason we think the case should be reversed and remanded for such further action as plaintiff may deem fit and proper. It is so ordered." [2]

The next case which touches this subject is *Porter v. Thompson*, 357 Mo. 31, 206 S.W.2d 509 (1947). The Supreme Court in that case refused to hold an employer liable for a shooting committed by its employee on the theory of negligent employment, in the absence of any showing that the employer knew or should have known of the employee's dangerous proclivities. This opinion seems to imply recognition of a cause of action on the theory of negligent hiring.

The most recent Missouri case dealing with the subject is *Wellman v. Pacer Oil Company*, 504 S.W.2d 55 (Mo. banc 1974). A majority of the court declined to hold the employer liable for actions of its employee which the court found to have been "outrageous acts." Three judges, dissenting, referred with apparent approval to the opinion in *Priest I*.[3] The majority opinion did not specifically discuss either of the two *Priest* opinions, but the majority opinion in *Wellman* does state in passing: "It should perhaps be noted that we are not here considering a situation where an employer knows that the employee has vicious propensities. There was no evidence of that kind in this case and hence we need not consider the effect that would be given to such evidence in a proper case."

Considering all of the foregoing cases, it would seem that *Priest II* is out of harmony with all the other expressions by Missouri courts on this subject and with the majority rule throughout the country. See annotations in 34 A.L.R.2d 372 and 48 A.L.R.3d 359, 57 C.J.S. Master and Servant § 559, p. 270 (1948), and Restatement (Second) of Agency Sec. 213, Comment d (1958). However, it is not incumbent upon us to so hold, for the reason that even if a cause of action for negligent hiring be recognized, nevertheless plaintiff in this case has failed to prove facts necessary to warrant recovery on that basis.

2. The *Priest* case again came before the same court on a second appeal and the second opinion, reported in 106 S.W.2d 936 is referred to above in this opinion. In *Priest II*, the Springfield Court of Appeals termed the language quoted above from *Priest I* as "purely dictum," and *Priest II* goes on to hold: "The plaintiff cites the opinion of this court in the former hearing, and some other cases which indicate that an employer might be held liable if he kept employed a person who was inclined to fondle with women, or had such a reputation. We

have been cited no case that squarely holds that way under a petition such as in this case, nor have we found any; and if our opinion in the former hearing of this case is susceptible of such a construction, that part of that opinion is overruled."

3. In *Butler v. Circulus, Inc.*, 557 S.W.2d 469, l.c. 475 (Mo.App.1977), the Eastern District also cited *Priest I* with apparent approval, again no reference being made to *Priest II*.

■ Even assuming the validity of a cause of action for negligent hiring, to recover the plaintiff must carry the burden of proving that the defendant employer knew or should have known of the dangerous proclivities of the employee. *Porter v. Thompson, supra.* Plaintiff here faced a monumental task in attempting to carry that burden, because the KCAC manager who hired Couch died shortly thereafter and before any discovery could be had. For that reason this record is virtually barren of any evidence as to just what the manager Berry did by way of investigation. Virtually all that the record shows is that Berry did interview Couch before hiring him. What other action Berry might have taken is left purely to conjecture.

Plaintiff did offer to prove through Berry's secretary, Mildred Lovan, that every time Berry called MIT for an applicant for the job as locker room attendant, he instructed the person at MIT with whom he spoke to not refer anyone to KCAC who had a criminal record. Ms. Lovan was unable to say that such a conversation occurred in connection with the Couch hiring, and her testimony with respect to Berry's general custom and practice was rejected by the trial court. Were this offered evidence to be accepted and taken as true, it would not aid plaintiff. To the extent that Berry did give such instruction to MIT, it would tend to exculpate Berry from any negligence.

The only evidence on this record which could conceivably tend to show negligence by Berry in the hiring of Couch related to the availability of Couch's record of past conviction. The evidence shows that the conviction was of record at the Kansas City Police Department and could have been obtained inexpensively merely upon request. From the fact that Couch was hired at all, it might possibly be inferred that Berry did not make inquiry to the Police Department.

Even if this inference were to be permitted, that would serve only to bring us face to face with the question of whether Berry had a duty to make an investigation concerning prior convictions. Most of the authority which has confronted this issue has denied the existence of such a duty. The case law on this subject is summarized in *Evans v. Morsell,* 284 Md. 160, 395 A.2d 480 (1978), as follows:

"However, the majority of courts flatly reject the contention of the plaintiff in the present case, namely that where an employee is to regularly deal with the public, an inquiry into a possible criminal record is required. On the contrary, the cases hold if the employer makes adequate inquiry or otherwise has a sufficient basis to rely on the employee, there is no need to inquire about a possible criminal record. [citing cases].

"We agree with the cases holding that an employer ordinarily has no duty to inquire concerning the possible criminal record of a prospective employee. It may today be quite difficult to obtain criminal records. In addition, when one has completed a criminal sentence or has been paroled, the employer to some extent is entitled to rely upon the determination of the government's criminal justice system that the individual is ready to again become an active member of society ... Furthermore, it would impose a significant burden upon employers, as well as upon unemployed prospective employees, if an employer had to regularly investigate the possible criminal background of applicants for employment...."

Similarly, *Stevens v. Lankard,* 31 A.D.2d 602, 297 N.Y.S.2d 686 (1968) holds: "In the case at bar we are of the opinion that there was no evidence which warranted the inference that appellants knew, or should have known, of the employee Lankard's proclivities. A routine check into the man's background would never have revealed his prior sodomy conviction in Pittsburgh. To require any more exhaustive search into an employee's background would place an unfair burden on the business community." *See also, Strawder v. Harrall,* 251 So.2d 514 (La.App.1971).

■ Moreover, even if KCAC did have some duty to investigate for Couch's prior

criminal record, its failure to do so would produce liability to plaintiff only if the failure to investigate was the proximate cause of her injury. In this case, the assault by Couch when he was alone with plaintiff could not reasonably have been foreseen. This assault occurred late at night long after his duties had concluded. The KCAC rules required that everyone, including the locker room attendant, be out of the premises by 6:00 p. m. Couch had no authority to be there himself after that hour for any purpose, and much less did he have any authority to invite anyone else to be there with him as his guest. His actions on this occasion were completely contrary to his instructions and beyond anything that KCAC was bound to have in contemplation.

These facts are somewhat analogous to those which were presented in *F & T Co. v. Woods*, 92 N.M. 697, 594 P.2d 745 (1979). In that case the defendant employed Sanders to deliver appliances to customers' homes. Plaintiff purchased a television set from defendant which Sanders delivered to plaintiff's home on August 30, 1973. During the night of September 2, 1973, Sanders returned, entered plaintiff's apartment without her permission and raped her. At the time of that incident, Sanders was on his own time, was not acting within the scope of his employment and had no authority from defendant to enter plaintiff's apartment. The court reversed a judgment for plaintiff, holding that the negligent hiring of Sanders by the defendant was not the proximate cause of plaintiff's damages:

> "We have applied the rule here. Nevertheless, we are convinced that under the facts in this case, defendant should not be held liable under a *negligent hiring* theory for the criminal act of its employee because, as a matter of law, the act of Sanders could not have been foreseen by defendant at the time it hired Sanders. To state it another way, under the specific facts in this case, defendant's negligence, if any, in hiring Sanders, was not the proximate cause of plaintiff's injury.

      *     *     *     *     *     *

To place liability upon the owner of a business for the *negligent hiring* or *negligent retention* of its employee under the circumstances existing in this case would go beyond what was ever intended under existing rules and principles of negligence and tort law. To hold defendant liable under the facts in this case would make every employer, including the State and all governmental subdivisions, an insurer of the safety of any person who may at any time have had a customer relationship with that employer." (emphasis in original)

To summarize, plaintiff failed to carry the burden of proving either a negligent hiring or that any proximate causation for plaintiff's damage can be traced to defendant KCAC. She therefore failed to make a submissible case.

### III.

Plaintiff's verdict directing instruction as to MIT told the jury that it must find for plaintiff if MIT "knew or should have known that COUCH was peculiarly likely to commit intentional misconduct because of his past felony conviction for assault with intent to rape with malice and because of the particular job duties he would be performing which would provide an opportunity or temptation for such misconduct." That instruction assumes that MIT had a duty to investigate as to whether Couch did have a prior criminal record. The basis for holding that KCAC had no such duty applies with even greater force to negate any such general duty on the part of MIT.

The only plausible ground upon which to argue that MIT had a special duty in this regard under the particular facts here would have to rely upon the excluded testimony of Lovan. But even if that testimony be treated as proper and be accepted as wholly true, it would not be sufficient to create a duty on the part of MIT to investigate. Any such duty would be a purely contractual one running only to KCAC—there would be no predicate upon which to say that MIT could reasonably foresee that a failure to so investigate would create any

danger to persons using the KCAC facilities. Moreover, any duty created by instructions from Berry that the applicant must have a "clean record" was amply met by the practice of MIT in placing notice of that qualification on the information card which it posted to advise its students of job openings. MIT cannot reasonably be said to have any further duty beyond that to screen and investigate each of its students who might decide to apply for the various jobs of which notice was so given.

To sum up, the evidence failed to support a cause of action against any of the three defendants. Their respective motions for a directed verdict at the close of all of the evidence should have been granted. The judgment in favor of all defendants is correct and therefore should be and is affirmed.

All concur.