Ferrara, John S., J.
Background
The plaintiff, Sheryl Goodman (“Goodman”) brought this action against the defendants First Horizon Home Loans (“First Horizon”), SingleSource Property Solutions, LLC (“SingleSource”), and others, seeking damages and injunctive relief. The complaint alleges that the plaintiff has been a tenant at an apartment building in Worcester for over 19 years and that she is a recipient of federal rental subsidies through Section 8 of the Housing Act of 1937 (42 U.S.C. §1437f) (“Section 8”), a program overseen by the United States Department of Housing and Urban Development. Beneficiaries under the program receive housing vouchers for payment of a landlord. The landlord must enter into a Housing Assistance Payment (“HAP”) contract with a local or regional agency administering the program. Ms. Goodman’s Section 8 benefits have been locally administered by a nonprofit agency, RCAP Solutions (“RCAP”).
Plaintiffs complaint asserts claims against all defendants for discrimination against her because she is a recipient of public assistance in violation of M.G.L.c. 15 IB, §4 (Counts I and II), aiding and abetting such discrimination in violation of c. 151B, §4(5) (CountHI), breach of the warranty of habitability (Count IV), interference with her right of quiet enjoyment of the premises in violation of M.G.L.c. 186, §14 (Count V), failure to provide utilities in violation of c. 186, §14 *569 (Count VI), and negligence, based on defendants’ claimed failure to supervise their employees and to terminate employees who failed to comply with state law (Count VII).
This matter is now before the Court on defendant SingleSource’s motion to dismiss all counts against it pursuant to Mass.R.Civ.P. 12(b)(6).
Legal Standard
To survive a motion to dismiss under Rule 12(b)(6), a complaint must set forth the basis of the plaintiffs entitlement to relief with “more than labels and conclusions.” The Court focuses on whether the factual allegations plausibly suggest an entitlement to relief. Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). While factual allegations need not be detailed, they “must be enough to raise a right to relief above the speculative level... [based] on the assumption'that all the allegations in the complaint are true (even if doubtful in fact)..." Id., quoting Bell Atl. Corp., 550 U.S. at 555. Rule 12(b)(6) requires that the complaint set forth “factual ‘allegations plausibly suggesting (not merely consistent with)’ an entitlement to relief. . .” Id., quoting Bell Atl. Corp., 550 U.S. at 557.
In considering a Rule 12(b)(6) motion, the Court accepts as true the allegations in the complaint and draws eveiy reasonable inference in favor of the plaintiff. Warner-Lambert Co. v. Execuquest Corp., 427 Mass. 46, 47, 691 N.E.2d 545 (1998). However, the Court does not accept as true legal conclusions cast in the form of factual allegations. Schaer v. Brandeis Univ., 432 Mass. 474, 477, 735 N.E.2d 373 (2000). “In addition to the complaint, exhibits attached to the complaint and orders and items appearing in the record of the case may also be taken into account.” 5A C.A. Wright & A.R. Miller, Federal Practice and Procedure §1357, at 299 (1990).
FINDINGS AND ORDER
Discrimination Claims (Counts I through III)
SingleSource asserts that Counts I through III of plaintiffs Complaint must be dismissed as there are no facts pled plausibly suggesting that plaintiff was subjected to housing discrimination because she was a recipient of a Section 8 subsidy.
The Complaint details First Horizon’s attempt to evict plaintiff, a long-time (then eighteen-year) tenant, only six weeks after it had acquired the property. (Pars. 10-13.) The eviction action was initiated though it might be inferred that rental payments would be made, in whole or in part, through RCAP. In answering the summary process complaint, Goodman alleged sanitary code violations. (Par. 15.) The action was voluntarily dismissed by First Horizon in January 2010. (Par. 16.)
In July 2010, RCAP wrote to SingleSource and detailed violations of the sanitary code that included no electricity, debris inside and outside the building, a sewer leak, and “infestation.” (Par. 18.) Defendant had a legal and contractual obligation to correct these code violations. On August 5, 2010, RCAP wrote to SingleSource to notify it that rental payments would be withheld until all necessary repairs were completed, that upon completion of the repairs SingleS-ource had to schedule reinspection of the premises, and if those things were not done in a timely manner, the Housing Assistance Payment (“HAP”) contract would be terminated. (Par. 21.)
On November 8, 2010, RCAP wrote to SingleSource and advised defendant that the HAP contract would be terminated effective December 10, 2010, because of defendant’s failure to remediate code violations. (Par. 24.)
On March 3, 2011, the Worcester Department of Inspectional Services (“Department”) conducted an examination of plaintiffs apartment and found multiple code violations rendering the apartment unfit for human habitation. First Horizon was notified of the code violations and commanded to rectify them. (Pars. 31, 32.) It did not do so. Further notice of the code violations were given to all defendants by the Department by a publication in May 2011. (Par. 36.)
On May 31, plaintiff contacted SingleSource and notified them that she had bed bug infestation. That same date, the Department inspected the apartment and found additional violations of the sanitary code. On June 1, 2011, the plaintiffs Section 8 voucher was terminated by RCAP. The Department sent First Horizon notice of the violations in early June. (Pars. 37-40.)
On July 5 and 6, 2011, the Department conducted reinspections of the apartment. None of the March 3, 2011, or May 31, 2011 violations had been corrected. (Pars. 41, 42.)
In July 2011, the Worcester Housing Court issued a preliminary injunction ordering the defendant, First Horizon, to remedy the habitation violations in the apartment. The bed bug infestation problem was remedied by a professional exterminator, but other defects were not corrected and persisted at least up to November 4, 2011, when the instant action was filed. (Pars. 43-45.)
Ms. Goodman’s Section 8 benefits were eventually reinstated through efforts of her legal counsel, but RCAP is still requiring her to move out of the premises because of the landlord’s persistent failure to remedy the sanitaiy code violations in her apartment and the building. (Par. 46.)
M.G.L.c. 151B, §4(10)[1] prohibits discrimination by a landlord against a person who is a recipient of a housing subsidy either “because the individual is such a recipient,” or “because of any requirement of such public assistance, rental assistance, or housing subsidy program.” DiLiddo v. Oxford Street Realty, Inc., 450 Mass. 66, 76, 876 N.E.2d 421, 428 (2007).
*570 The defendants, First Horizon and SingleSource, never notified the plaintiff, RCAP, or the Department that they lacked the funds or resources to maintain the property and that they sought to terminate the tenancies of all occupants. It is obvious that SingleS-ource and First Horizon required rental income. It strains credulity to believe that if all tenants in the apartment building had withheld their rent from August 2010 through July 2011, SingleSource and First Horizon would have persisted in their refusal to correct habitation violations. It could be inferred that Single-Source and First Horizon did not want to have tenants who were receiving rental subsidies either because they felt it detracted from the building, or because they did not want to have to deal with agencies that would inspect the premises and would withhold payment if there were code violations. The Complaint sufficiently alleges a pattern of conduct suggesting discrimination against plaintiff because she was a Section 8 tenant.
Breach of the Warranty of Habitability; Breach of Right of Quiet Enjoyment; Failure to Provide Utilities (Counts IV, V, VI)
The warranty of habitability is an implied warranty by the landlord in all residential tenancy agreements, written or oral, that the condition of the premises shall meet the minimum standards of the sanitary code. The landlord guarantees that the rental unit is fit for human habitation and will remain so throughout the tenancy. Boston Housing Authority v. Hemingway, 363 Mass. 184 (1973); Jablonski v. Clemons, 60 Mass.App.Ct. 473 (2004).
Also implied in all residential tenancies is a “covenant of quiet enjoyment”: an assurance that the landlord will provide certain utilities and services that are required for utilization of the premises, will not interfere with the tenants’ quiet enjoyment of the premises, and will not attempt to regain possession of the premises by force without judicial process. The covenant of quiet enjoyment is codified at M.G.L.c. 186, §14. That section makes “any lessor or landlord of any building or part thereof occupied for dwelling purposes” a party to the covenant. Id.
SingleSource argues that Counts IV, V and VI of plaintiffs Complaint should be dismissed because SingleSource was not the owner or lessor of the properly and thus a landlord-tenant relationship necessary for liability under these causes of action did not exist between SingleSource and plaintiff. SingleSource relies, in part, on a Massachusetts Federal District Court case, Weisman v. Hill, 629 F.Sup.2d 106 (2009), which held that an employee of a municipal housing authority who acted as the building manager could not be individually liable for breach of the covenant of quiet enjoyment:
Thuot [the individual defendant], however, is not plaintiffs landlord . . . The lease here is between plaintiff and the Housing Authority, Thuot was not a party to the lease, and thus cannot be sued under it. Whatever claims plaintiff may have against the Housing Authority for breach of the covenant do not extend to the landlord’s employees and agents in their personal capacity.
Id., at 114.
The defendant reads Weisman too broadly, though understandably given the above-quoted language from the opinion. However, Weisman does not stand for the proposition that only an owner or lessor may be liable for breach of the covenant of quiet enjoyment, but rather that only a landlord may be liable. The individual defendant in Weisman was merely an employee of the Fitchburg Housing Authority. The Housing Authority “operated” the municipally owned housing project for the City and was the landlord, vicariously liable for the actions of its employee.
Ownership is one element to be considered in determining whether the relationship of landlord and tenant exists, but one who has possession and exercises control of the leased premises may be a landlord although he is not an owner.
If the defendant by his conduct in dealing with the property by his knowledge and his transactions in reference to the property, so acted that it could be fairly said he assumed the duties and responsibilities of a landlord, it could be found he was in fact the landlord, although he made no such representation in words to the plaintiff. Connery v. Cass, 277 Mass. 545, 549, 179 N.E. 164, 165.
Backoff v. Weiner, 305 Mass. 375, 377, 25 N.E.2d 718, 719 (1940).
In this case, the actions of SingleSource establish that it was the de facto landlord with control of the premises and broad authority to act as agent for the owner.
Negligence (Count VII)
SingleSource argues that plaintiffs negligence claim must fail because it is simply a recasting of plaintiffs claims for discrimination, breach of warranty, and violations of M.G.L.c. 186, §14, and because those claims do not lie, the negligence claim is not viable. Defendant further asserts that, to the extent plaintiffs negligence claim sounds in discrimination, that it is subsumed by her M.G.L.c. 151B discrimination claim.
The Court finds that the Chapter 186, §4 claims against SingleSource are viable claims. A claim for breach of the covenant of quiet enjoyment may include a claim for negligent infliction of emotional distress when the emotional distress is reasonably foreseeable. Homesauers Council of Greenfield Gardens, Inc. v. Sanchez, 70 Mass.App.Ct. 453 (2007). To the extent that Count VII alleges negligent interference with plaintiffs quiet enjoyment of her leased premises causing her emotional distress, it is sufficiently pled. (See Pars. 47-51.)
*571 The plaintiff s theory of negligent retention is more difficult. “Negligent retention occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge or reassignment.” Foster v. Loft, Inc., 26 Mass.App.Ct. 289, 291-92, 526 N.E.2d 1309, 1311-12 (1988), quoting Garcia v. Duffy, 492 So.2d 435, 438-39 (Fla.Dist.Ct.App. 1986). This cause of action is independent of the employer’s liability under the principles of respondeat superior. Id. at 291, fn4, citing Porter v. Thompson, 357 Mo. 31, 206 S.W.2d 509 (1947), and Restatement (Second) of Torts §317 (1963).
It is difficult to envision a factual scenario where SingleSource could have negligently permitted the sanitary code violations to continue for months, after receiving notice of them, or how any failure to terminate employees was negligent. It would seem that in order to prove a negligent discrimination claim, plaintiff would have to establish that SingleSource did not know of and condone the ongoing habitation violations. However, the issue of SingleSource’s knowledge and intent may be more appropriately raised through a motion for summary judgment after discovery has been conducted, and the Court declines to narrow the scope of Count VII at this time.
ORDER
For the foregoing reasons, therefore, the defendant SingleSource’s motion to dismiss is DENIED with respect to all counts.

It shall be an unlawful practice: . . . For any person furnishing credit, services or rental accommodations to discriminate against any individual who is a recipient of federal, state, or local public assistance, including medical assistance, or who is a tenant receiving federal, state, or local housing subsidies, including rental assistance or rental supplements, because the individual is such a recipient, or because of any requirement of such public assistance, rental assistance, or housing subsidy program. M.G.L. 151B, §4(10).