Stephenson, J.
 

 By the pleadings, and during the statement of the case, it was admitted by counsel for the defendant that at the time of the collision in question the son was the agent of the father. This brought the case within the theory of
 
 respondeat superior.
 
 It will be noted that this admission falls far short of admitting liability, but counsel seem to think that by this admission the charge that the father was negligent in entrusting his car to his son, who was an incompeteñt driver, was taken out of the case entirely. This court cannot subscribe to that contention.
 

 A careful perusal of the case of
 
 Gardiner
 
 v.
 
 Solomon,
 
 200 Ala., 115, 75 So., 621, L. R. A., 1917F, 380, will readily convince the reader that' these theories are distinct. In that case the theory of
 
 respondeat superior
 
 was pleaded in the first two causes of action;
 
 *267
 
 while the theory that the mother entrusted the driving of her car to the son, who was an incompetent driver and she knew it, was pleaded in the third and fourth causes of action. The court in that case held that these were proper pleas.
 

 The case of
 
 Elliott
 
 v.
 
 Harding,
 
 107 Ohio St., 501, 140 N. E., 338, 36 A. L. R., 1128, is a substantial replica of the case of
 
 Gardiner
 
 v.
 
 Solomon, supra,
 
 but not so exhaustive.
 

 The plea of “incompetent driver” is not as full and comprehensive as it could have been; but no motion was addressed to it, and an issue was made.
 

 It is claimed that error was infused into the case when counsel for plaintiff called the defendant for cross-examination under the statute and propounded the following questions:
 

 “Q. Before January 5, 1931, how many automobile accidents had Walter Stewart had? (Defendant objects.)
 

 “And thereupon court recessed for a few minutes, the court first admonishing the jury. * * * And thereupon after the jury returned to the court room the objection was sustained. To all of which the plaintiff excepted.
 

 “Q. Had you ridden with Walter when he drove the car? A. Yes, sir.
 

 “Q. You have ridden with him when he drove the car sixty miles an hour, haven’t you? A. No, sir.
 

 “Q. Ever ride with him when he run into another car? A. No, sir.
 

 “Q. Were you with him when he—
 

 “Mr. Elliott: I object and I think this question is for the purpose of getting around the ruling of the court.
 

 “Mr. Harlan, in behalf of plaintiff, objected to misconduct of counsel.
 

 “Q. Were you riding with Walter in the latter part of May, 1930, when he was traveling very fast and ran
 
 *268
 
 into an automobile at Flenner’s Corner? (Defendant objects; overruled; defendant excepts.)
 

 “A. Why he never ran into anybody at Flenner’s Corner.
 

 “Q. (Stenographer reads question.) A. No, I wasn’t.
 

 “Q. You make the statement he never ran into any one, how do you know? A. If he broke the machine or damaged the machine I would know it, wouldn’t I?
 

 “Q. Didn’t he break the machine up some at Flenner’s Corner in May, 1930? (Defendant objects; overruled; defendant excepts.)
 

 “Q. You say you ought to know it if he had damaged the car any — isn’t it a matter of fact, don’t you know it, that he did? (Defendant objects; overruled; defendant excepts.) A. No, he didn’t.
 

 “Q. Didn’t he have an accident there- and damage your car and didn’t David Clark himself bring Walter home? A. No, he brought the other boy home. This wasn’t Walter. This was Roy. The accident didn’t happen at Flenner’s Corner, either.
 

 “Q. It was about at Flenner’s Corner, wasn’t it? A. No, the fellows took the machine to Flenner’s Corner to have it fixed.
 

 “Q. It was in the neighborhood of Flenner’s Corner, wasn’t it? A. No.
 

 “Q. Where did it happen? A. In front of Jake Stout’s.
 

 “Q. That is farther on towards Excello from where you live? A. Yes, sir.
 

 “Q. You say that wasn’t Walter? A. No, it wasn’t Walter.
 

 “Q. Where is the other boy? A. At home.
 

 “Q. How old is he? A. Nineteen.
 

 “Q. Was that the boy David Clark brought home? A. Yes, sir.
 

 “Q. Wasn’t it Walter? A. No.
 

 “Q. Now you say you ought to know if Walter ever
 
 *269
 
 had the car broken up, let’s see if you know. Didn’t he run into somebody at Matson’s Corner and have the car broken up? (Defendant objects.)
 

 “Court: He may answer if he knows. (Defendant excepts.)
 

 “Q. (Stenographer reads question.) A. Not as I know of.
 

 “Q. Not that you know of? A. Not my car.
 

 “Q. Well, whose car was it? A. I don’t know.
 

 “Q. Sir? A. He was driving the milk route for his brother and was coming out of the road and somebody ran into him, that is all.
 

 “Q. Were you there? A. No.
 

 ‘' Q. When you say somebody ran into him, then you have no personal knowledge of that, have you — no personal knowledge, have you? A. Well I heard them talking about it. * * * (Plaintiff moves to strike out answer; answer stricken out.)
 

 “Q. Now the automobile that he was driving that you refer to at Matson’s Corner, wasn’t that yours? A. No, sir.
 

 “Q. That was another son’s? A. Yes, sir.
 

 “Q. Was that Roy’s? A. No, sir, William’s. * * *
 

 “Q. Was Walter driving your car and ran into another car, just outside of Monroe? (Defendant objects; overruled; defendant excepts.) * * *
 

 “Q. Don’t you know Walter had the reputation of driving fifty or sixty miles an hour? (Defendant objects.)
 

 “Court: He may answer yes or no, as to whether he knows. (Defendant excepts.) A. He did not have that reputation.
 

 “Q. Do you have any personal knowledge of his running into other automoblies? (Defendant objects; overruled; defendant excepts.)
 

 “A. Well, I know he never ran into any other automobiles.”
 

 It was claimed that this course of cross-examina
 
 *270
 
 tion constituted misconduct of counsel. An examination of the record, remembering the issues, does not bear out this contention. It will be noted that the trial court sustained the first objection to a question sought to elicit the father’s knowledge of the son’s recklessness. Numerous other objections were made along the same line, but these objections were consistently overruled by the court, and to each and all of them defendant saved his exceptions. Can it be said that counsel was guilty of misconduct in view of the fact that the court was ruling in his favor? If there was error, was it not the error of the court in overruling counsel’s objections to this line of testimony?
 

 This was cross-examination of a party and it is not error for the trial court to indulge counsel in a liberal scope under such circumstances, if the testimony sought to be adduced by the questions has even a remote tendency to prove or disprove any issue made by the pleadings.
 

 Counsel for defendant in error claim that the viciousness of this line of cross-examination lay in the fact that counsel hy his questions was assuming the truth of certain facts upon which no evidence had been introduced. It will be granted that such contention is true; but the court did not consistently sustain objections made along this line. As was said heretofore, he sustained just one objection.
 

 Counsel for defendant further insist that counsel for plaintiff was not acting in good faith in asking these questions of the defendant, as no testimony was introduced during the progress of the trial tending to show that defendant’s son had a reputation for being a negligent, reckless and careless driver and counsel did not prove any specific instances of reckless driving.
 

 It will be noted in the bill of exceptions that counsel for plaintiff called as a witness Ed Meyer, and did undertake to show specific instances of reckless driv
 
 *271
 
 ing on the part of the son. Objection thereto was made by counsel for the defendant, and sustained. During the cross-examination of the witness Albert Stewart, similar questions were asked. They were objected to by counsel for defendant, and uniformly sustained by the court. This was likewise true of the witness Walter Stewart.
 

 There was not such an absence of effort on the part of counsel for plaintiff to prove that Walter Stewart was reckless and negligent, and thereby incompetent, as would warrant this court in saying that counsel was acting in bad faith when he asked such questions of the defendant.
 

 It is insisted that specific instances are incompetent as bearing upon the question of a reckless, negligent course of conduct. The authorities are without number that such questions are germane.
 
 Pittsburgh Rys. Co.
 
 v.
 
 Thomas
 
 (C. C. A.), 174 F., 591;
 
 First National Bank of Montgomery
 
 v.
 
 Chandler,
 
 144 Ala., 286, 39 So., 822, 113 Am. St. Rep., 39;
 
 Fletcher
 
 v.
 
 Baltimore & Potomac Rd. Co.,
 
 168 U. S., 135, 18 S. Ct., 35, 42 L. Ed., 411.
 

 Suffice it to say that this cross-examination was within the control of the trial court, and under the rulings there made counsel for plaintiff was not belligerent to the extent that his course of cross-examination could be characterized as “misconduct of counsel.”
 

 We will admit that if this issue had not been in the case, and this seems to have been the view taken by the Court of Appeals, it would have constituted misconduct of the grossest character. But such issue was in the case by force of the pleadings, and it was not taken out by reason of the admission of agency.
 

 Defendant in error insists that independent of this contention there are errors apparent of record that warranted the Court of Appeals in reversing the trial court. Opposing counsel insist that there is but one
 
 *272
 
 question presented to this court, to wit, “misconduct of counsel.” In support of that contention he cites the case of
 
 Curry
 
 v.
 
 Manfull, Admr.,
 
 123 Ohio St., 118, 174 N. E., 248, second paragraph of the syllabus. A casual reading of the second paragraph of the syllabus of that case would seem to support such contention; but when the facts are considered it will be readily ascertained that it establishes no such rule. It will be noted that the Court of Appeals in that case heard testimony, made findings of fact and entered final judgment on the theory that the case was an appeal-able case, when as a matter of fact it was a proceeding in error. This court did hold in that case that the issue was made upon the assignments of error set out in the petition in error in the Court of Appeals; that it was, as a matter of fact, an error proceeding and could not be heard
 
 de novo
 
 in the Court of Appeals.
 

 It has long been held in this court that where in a proceeding in error plaintiff urges certain specific errors, whereby it is sought to reverse the judgment of the Court of Appeals, defendant, having brought into the record other grounds of prejudicial error, has a right to present and urge them to' the extent that, although this court may find that the Court of Appeals erred in a certain particular in reversing the trial court, it was correct in its judgment, as the record on its face displayed other reversible error. A reference to the following cases- is all sufficient for this purpose:
 
 Ardrey et al., Exrs.,
 
 v.
 
 Shell,
 
 77 Ohio St., 218, 82 N. E., 1075, and
 
 Rheinheimer
 
 v.
 
 Aetna Life Ins. Co.,
 
 77 Ohio St., 360, 83 N. E., 491, 15 L. R. A. (N. S.), 245.
 

 Are there other errors apparent on the face of the record? There is testimony in the record tending to show that there was a cinder path along the highway in question, where the collision occurred. This was an issue and there was testimony to support it. That being true, the provisions of Section 6310-34, G-eneral Code, became a part of the case. This section provides
 
 *273
 
 as follows: “Where crosswalks or cinder paths parallel the public road or highway pedestrians shall not walk in, along or upon the vehicular traveled portion of such public road or highway, except at crossing and crosswalks, except in cases where crossings or crosswalks are an unreasonable distance apart.”
 

 Ordinarily the right of a pedestrian is neither superior nor inferior to the rights of the operator of a motor vehicle. They do have equal rights in the highway or street except in the face of a law that makes them unequal. This section is a police regulation, reasonable in every respect. If there was a cinder path at the point in question, and that was a question for the jury, it was the duty of the plaintiff to follow it unless for some substantial reason he was required to cross the highway.
 

 The court charged as follows: “Now as a matter of law the right of a pedestrian is neither superior nor inferior to the rights of the operator of a motor vehicle. They have equal rights in the highway or street.”
 

 We are of opinion that this statement of the court was a part of the definition of the issues in the case, that it was erroneous in failing to state the statutory limitations, and was saved by a general exception to the charge of the court.
 

 Adverting again to the definition of the issues. The court, in its general charge, enumerated the six specifications of negligence, and added,
 
 “And for a seventh ground of
 
 negligence, the plaintiff claims that said Walter Stewart at said time was a youth of about the age of seventeen years and was an inexperienced, careless, reckless, and incompetent driver, all of which was well known to the defendant, and the plaintiff claims further that the defendant was careless and negligent in entrusting said motor vehicle to said Walter Stewart on the public highway.”
 

 This issue remained in the case although there was
 
 *274
 
 little, if any, testimony to support it. The trial court was not required to take judicial cognizance that there was no testimony to support this issue. The motions to direct a verdict, made at the close of plaintiff’s testimony and at the conclusion of all the testimony, did not take the issue out of the case, consequently it remained, and the court, under such circumstances, was required to leave it to the jury as to whether or not such allegation of negligence was proven. To acquaint the jury with its duty in this regard the court was required to define this issue in its general charge, no special instructions having been requested along that line. This the court undertook to do, as quoted above. In so doing, did he commit prejudicial error?
 

 It will be noted that the court, after stating the six specifications
 
 seriatim,
 
 referred to this issue as a “seventh ground of negligence.” It was not a “seventh ground of negligence,” but, instead, a s'econd theory of liability; the first theory resting upon the doctrine of
 
 respondeat superior.
 

 This was an incorrect definition of an issue. Was it prejudicial? Prejudice is almost universally presumed where the court improperly defines the issues. Would the natural tendency of this charge be to mislead the jury, and, if so, in what respect?
 

 We are taking the charge by its four corners. The court states in substance:
 

 “Plaintiff in his amended petition claims that on the morning of January 5, 1931, * * * he was walking from Amanda to Engelside in Butler county, Ohio. That Walter Stewart at the same time was driving a motor vehicle in the same direction and struck the plaintiff, threw him to the ground and injured him.
 

 “That these injuries were caused by the carelessness and negligence of defendant as follows:
 

 “First, Walter Stewart * * * was driving at a careless and negligent rate of speed of more than thirty-five miles an hour;
 

 
 *275
 
 “Second, lie failed to keep a lookout for persons using the highway;
 

 “Third, after Walter Stewart saw plaintiff, or should have seen him, he failed to reduce the speed of his automobile or attempt to avoid striking the plaintiff;
 

 “Fourth, he was operating said automobile without lights;
 

 “Fifth, he failed to maintain control of said automobile ;
 

 “Sixth, he failed to sound any warning or give plaintiff any notice of his approach.”
 

 For a seventh ground of negligence, there follow the allegations that Walter Stewart was an incompetent driver, that defendant knew it, and with such knowledge entrusted the driving of his car to him.
 

 This is followed by a recital of the issue of sole negligence of plaintiff as pleaded in defendant’s answer.
 

 The court then charges:
 

 “The burden of proof is upon the plaintiff to prove by a preponderance of the evidence that the defendant was negligent as alleged
 
 in the amended
 
 petition.”
 

 “The court has just stated to you the substance of what are known in law as the pleadings in the case, consisting of the amended petition of the plaintiff,” etc. “These papers you will have with you in the jury room # * for the purpose of ascertaining the claims of the parties. They are not evidence and should not be so considered by you,” etc.
 

 The charge and the amended petition are
 
 in haeo verba.
 

 The second theory of the case, that defendant knowingly entrusted his car to an incompetent driver, is described in the charge of the court as “the seventh ground of negligence,” and this is borne out by the amended petition, as it is stated immediately after the sixth specification of negligence alleged in the
 
 *276
 
 amended petition, and the jury was given the amended petition to take with them to their jury room, in order that they may ascertain the claims of the parties.
 

 Is it not reasonable to infer that under this instruction the jury would treat the “seventh ground of negligence,” to wit, that defendant knowingly entrusted the driving of his car to his son who was an incompetent driver, as a distinct specification of negligence; and if plaintiff proved such fact he would be entitled to recover, whether he proved that the driver of the motor vehicle at the time of the accident was negligent in some of the respects claimed by plaintiff or not, and if there was any doubt along this line, they could refer to the amended petition, which they had in the jury room, to verify such contention.
 

 We think it was necessary for the court to have gone further in order to clarify this issue, and to charge the jury to the effect that notwithstanding they found that the defendant entrusted the driving of his car to his son, knowing at the time that he was an incompetent, driver, plaintiff must in addition thereto prove by a greater weight of the evidence that the son, at the time and place in question, was negligent in all or some of the respects claimed by the plaintiff, and that such negligence was the proximate cause of the injuries; and the failure of the court to enlarge upon this issue was error, and the question was saved by a general exception to the charge.
 

 For errors of law in the charge of the court to the jury, the judgment of the Court of Appeals is hereby affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Day, Allen, Jones and Matthias, JJ., concur.
 

 Kinkade, J., not participating.