Laura L. McHAFFIE, by and through Her Guardian and Conservator, Rita Diane McHAFFIE, Appellant,

v.

Cindy D. BUNCH,

and

Donald R. Farmer, et al., Respondents.

No. 76840.

Supreme Court of Missouri, En Banc.

Jan. 24, 1995.

Rehearing Denied Feb. 21, 1995.

Thomas Strong, Cynthia O. MacPherson, Jeffrey Bates, Springfield, for appellant.

Randy Cowherd, William W. Francis, Jr., Springfield, for respondents.

HOLSTEIN, Judge.

An automobile accident on Interstate Highway 44 in Greene County, Missouri, in February of 1989, left Laura McHaffie with permanent mental and physical disabilities. Her guardian brought this action. Following a verdict and judgment, the parties appealed. The Missouri Court of Appeals, Southern District, concluded that a claim for "negligent hiring" against the employer of the driver of one vehicle involved in the accident was improvidently submitted to the jury and, therefore, a new trial was ordered on all issues. This Court granted transfer. *Rule 83.03.* Affirmed in part and reversed and remanded in part.

I.

McHaffie was a passenger in a vehicle driven by Cindy D. Bunch. The Bunch vehicle left the eastbound lanes of Interstate 44, crossed the median, travelled across the westbound lanes, struck a guardrail, and collided with a westbound tractor-trailer. The tractor-trailer was operated by Donald R. Farmer. Bruce Transport and Leasing was the owner-lessor of the truck, and Rumble Transport was the operator-lessee of the truck. The plaintiff's claim against Bunch was that she was negligent for failing to drive on the correct side of the road. Farmer was alleged to have failed to keep a careful lookout or failed to stop, swerve or slacken his speed when he should have done so. Claims were made that Farmer was an employee of Bruce and Rumble and, as such, those two defendants were vicariously liable for Farmer's negligence.

In a separate count it was charged that Bruce and Rumble had negligently hired and supervised Farmer. However, the plaintiff only submitted this theory against Rumble. Although Rumble and Bruce conceded Farmer was their employee acting in the course and scope of employment at the time of the collision, plaintiff introduced evidence that Rumble did not require Farmer to have adequate experience, testing, training, and medical evaluations before driving their trucks. In addition, evidence was introduced that the employers did not adequately enforce regulations requiring Farmer to maintain log books. However, nothing in the pleadings or the evidence suggests that the employer's lack of care in hiring the driver might have caused plaintiff's injuries in the absence of negligence by the driver.

The jury found McHaffie's total damages to be $5,258,000. The jury assessed percentages of fault as 70% to Bunch, 10% to Farmer, Bruce and Rumble based on Farmer's negligence and Bruce and Rumble's vicarious liability, 10% to Rumble based on negligent hiring, and 10% to plaintiff based on riding with an intoxicated person. Judgment was entered consistent with the verdict. By way of a later amended entry, prejudgment interest was added.

Defendants Farmer, Bruce and Rumble argue nine points, including that it was improper to pursue a claim against Rumble based on both *respondeat superior* and negligent hiring. Defendant Bunch appeals, arguing two evidentiary matters and that the court erred in awarding prejudgment interest. The plaintiff filed a cross-appeal and argues that the court erred in submitting a comparative fault instruction against her.

## II.

Defendants Farmer, Bunch and Rumble argue in Point I that it is improper for a plaintiff in a motor vehicle accident to submit a claim of negligent entrustment or negligent hiring against a defendant driver's employer when the employer admits that the driver was acting within the scope and course of his employment at the time of the collision and when the plaintiff's claim is dependent on the existence of the driver's negligence. In Point V they argue that submission of *respondeat superior* and negligent hiring theories are inconsistent theories and cannot both be submitted.

There are at least three distinct theories under which an employer might be held to have derivative or dependent liability for the conduct of an employee under Missouri law. *Ransom v. Adams Dairy Co.*, 684 S.W.2d 915, 920 (Mo.App.1985). Derivative or dependent liability means that one element of imposing liability on the employer is a finding of some level of culpability by the employee in causing injury to a third party.

■ First, an employer is liable under the theory of *respondeat superior* for damages attributable to the misconduct of an employee or agent acting within the course and scope of the employment or agency. *Burks v. Leap*, 413 S.W.2d 258, 266 (Mo.1967). In this case, Bruce and Rumble both admitted that Farmer was their agent and employee working within the scope of his employment at the time of the accident. Therefore, agency was not a contested issue in the case.

■ A second theory under which an employer may be held liable is that of "negligent entrustment." That theory requires proof that (1) the entrustee is incompetent, (2) the entrustor knew or had reason to know of the incompetence, (3) there was an entrustment of a chattel, and (4) the negligence of the entrustor concurred with the negligence of the entrustee to harm the plaintiff. *Evans v. Allen Auto Rental and Truck Leasing, Inc.*, 555 S.W.2d 325, 326 (Mo. banc 1977). This theory permits imputation of negligence without requiring a finding that the employee was acting in the course or scope of employment. The verdict directing instruction submitted by plaintiff regarding Rumble's separate liability comes close to submitting the elements of negligent entrustment although it fails to require a finding that Farmer was incompetent or unqualified to drive commercial vehicles.

■ Third, Missouri has recognized a cause of action for "negligent hiring." *Gaines v. Monsanto Co.*, 655 S.W.2d 568, 570–71 (Mo.App.1983). The cases seem to suggest that its elements do not include a requirement that the offending conduct occur within the course and scope of employment. Rather, liability turns on whether there are facts from which the employer knew or should have known of a particular dangerous proclivity of an employee followed by employee misconduct consistent with such dangerous proclivity by the employee. *See Butler v. Circulus, Inc.*, 557 S.W.2d 469, 475 (Mo.App.1977), quoting *Restatement (Second) of Torts*, Sec. 302B, comment e, note D; *see also Porter v. Thompson*, 357 Mo. 31, 206 S.W.2d 509, 512 (1947); *Gaines v. Monsanto Co.*, 655 S.W.2d 568, 571–72 (Mo.App.1983); and *Strauss v. Hotel Continental Co., Inc.*, 610 S.W.2d 109, 112–16 (Mo.App.1980). In each of these cases, the employee's misconduct was intentional or criminal. In addition, most of the cases involve a "special relation-

ship" between the employer and the injured party. Thus, it is at least arguable that to establish negligent hiring in Missouri the employee's misconduct must be intentional or criminal in nature or that such "special relationship" exists. Nevertheless, it will be assumed that the facts in this case are sufficient to establish a cause of action for negligent hiring, although the pleadings, evidence and instruction seem to more closely track the negligent entrustment theory. One element of negligent hiring is some form of misconduct by the employee that caused damages to the plaintiff. Like *respondeat superior* or negligent entrustment, this is a form of imputed liability because the employer's duty is dependent on and derivative of the employee's misconduct.

### A.

◼ The majority view is that once an employer has admitted *respondeat superior* liability for a driver's negligence, it is improper to allow a plaintiff to proceed against the employer on any other theory of imputed liability. *Elrod v. G & R Construction Co.,* 275 Ark. 151, 628 S.W.2d 17, 19 (1982); *Armenta v. Churchill,* 42 Cal.2d 448, 267 P.2d 303, 308–09 (bank 1954); *Clooney v. Geeting,* 352 So.2d 1216, 1220 (Fla.App.1977); *Willis v. Hill,* 116 Ga.App. 848, 159 S.E.2d 145, 157 (1967), *rev'd on other grounds,* 224 Ga. 263, 161 S.E.2d 281 (1968); *Wise v. Fiberglass Systems, Inc.,* 110 Idaho 740, 718 P.2d 1178, 1181 (1986); *Houlihan v. McCall,* 197 Md. 130, 78 A.2d 661, 664–65 (1951); *see also* 7A Am.Jur.2d, *Automobiles and Highway Traffic* § 643 (1980), and Debra E. Wax, Annotation, *Propriety of Allowing Persons Injured in Motor Vehicle Accident to Proceed Against Vehicle Owner Under Theory of Negligent Entrustment Where Owner Admits Liability Under Another Theory of Recovery,* 30 A.L.R. 4th 838 (1984). This appears to be the better reasoned view.

The reason given for holding that it is improper for a plaintiff to proceed against an owner of a vehicle on the independent theory of imputed negligence where *respondeat superior* is admitted has to do with the nature of the claim. Vicarious liability or imputed negligence has been recognized under vary-

ing theories, including agency, negligent entrustment of a chattel to an incompetent, conspiracy, the family purpose doctrine, joint enterprise, and ownership liability statutes. If all of the theories for attaching liability to one person for the negligence of another were recognized and all pleaded in one case where the imputation of negligence is admitted, the evidence laboriously submitted to establish other theories serves no real purpose. The energy and time of courts and litigants is unnecessarily expended. In addition, potentially inflammatory evidence comes into the record which is irrelevant to any contested issue in the case. *Wise v. Fiberglass Systems, Inc.* 718 P.2d at 1181–82, and *Willis v. Hill,* 159 S.E.2d at 158. Once vicarious liability for negligence is admitted under *respondeat superior,* the person to whom negligence is imputed becomes strictly liable to the third party for damages attributable to the conduct of the person from whom negligence is imputed. The liability of the employer is fixed by the amount of liability of the employee. *Helm v. Wismar,* 820 S.W.2d 495, 497 (Mo. banc 1991). This is true regardless of the "percentage of fault" as between the party whose negligence directly caused the injury and the one whose liability for negligence is derivative.

Having said that, it may be possible that an employer or entrustor may be held liable on a theory of negligence that does not derive from and is not dependent on the negligence of an entrustee or employee. In addition, it is also possible that an employer or an entrustor may be liable for punitive damages which would not be assessed against the employee/entrustee. *See Clooney v. Geeting,* 352 So.2d at 1220. Finally, it is conceivable that in a contribution action between an employer and employee, the relative fault of those two parties may be relevant. However, none of those circumstances exist here. Those issues await another day.

Missouri law imposes liability for negligent entrustment and, in a proper case, negligent hiring. Assuming the evidence supported a claim of negligent entrustment or negligent hiring, such evidence was unnecessary because vicarious liability had already been established under the theory of *respondeat*

*superior* under which the employer is strictly liable for all fault attributed to the negligent employee.

Plaintiff cites *Bruck v. Jim Walter Corp.*, 470 So.2d 1141 (Ala.1985); *Perin v. Peuler*, 373 Mich. 531, 130 N.W.2d 4 (1964); and *Clark v. Stewart*, 126 Ohio St. 263, 185 N.E. 71 (1933), in support of allowing a submission of vicarious liability and a separate submission of negligent entrustment. If *Bruck, Perin* and *Clark* were adopted, it is possible that an employer's negligent hiring or negligent entrustment of a vehicle to an employee would result in assessment of a greater percentage of fault to the employer than is attributable to the employee. That is plainly illogical. It is little wonder that these cases are and properly should remain cited as contrary to "the overwhelming weight of authority." *Willis*, 159 S.E.2d at 152.

The plaintiff also cites W. Page Keeton et al., *Prosser and Keeton on the Law of Torts*, § 70, at 501–02 (5th ed. 1984), for the following proposition:

> Once it is determined that the man at work is a servant, the master becomes subject to vicarious liability for his torts. He may, of course, be liable on the basis of any negligence of his own in selecting or dealing with the servant, or for the latter's acts which he has authorized or ratified, upon familiar principles of negligence and agency law.

The above quotation from *Prosser* means no more than what has already been said; there are multiple theories for imputing liability for the tortious acts of others.

The Court concludes that once the agency relationship was admitted, it was error to permit a separate assessment of fault to defendant Rumble based upon the "negligent entrustment" or "negligent hiring" theories of liability. It was also error to admit evidence on those theories.

### B.

■ Having concluded that it was error to separately submit the negligence of Rumble and to admit evidence on that theory, we next determine the scope of the remand. Generally, trial courts commit reversible error when they admit irrelevant and immaterial evidence having a prejudicial effect. *Hungate v. Hudson*, 353 Mo. 944, 185 S.W.2d 646, 648–49 (1945). The prejudicial effect of admitting evidence on plaintiff's negligent entrustment claim is demonstrated by the jury's assignment of 10% of fault to Rumble based on that claim. The evidence relating to Farmer's lack of testing, inexperience, his failure to properly maintain log books on unrelated trips, and his employer's failure to maintain adequate records was irrelevant to any legitimate issue. Such evidence was also prejudicial to Farmer in that it only served to antagonize the jury against Farmer and confuse the issue of negligence as to defendants Farmer, Bruce and Rumble. *See Williams v. Bailey*, 759 S.W.2d 394, 397–98 (Mo.App.1988). All assessments of fault against those defendants must be set aside.

At the same time, nothing suggests prejudice as to the assessment of fault to Bunch or McHaffie or of the total amount of plaintiff's damages. It would require a number of assumptions, including one that the jury failed to follow the damages instruction, to conclude that the assessment of plaintiff's total damages was somehow colored by the evidence of negligent entrustment. Because the only discernible prejudicial effect was on the assessment of liability as to Farmer, Rumble and Bruce, it is only that part of the judgment that must be reversed.

In such circumstance, *Kibbons v. Union Electric Co.*, 823 S.W.2d 485 (Mo. banc 1992), provides guidance on the proper scope of remand. In *Kibbons* a jury assessed fault between the plaintiff and two defendants and it was subsequently determined that only one defendant could be assessed fault as a matter of law. This Court determined that the jury's verdict fixed plaintiff's damages and, on remand, a new jury should only allocate the defendant's percentage of fault between plaintiff's decedent and the remaining defendant.

Defendants argue that *Barlett v. Kansas City Southern Railway Co.*, 854 S.W.2d 396 (Mo. banc 1993), is controlling if plaintiff's negligent hiring claim is disallowed. In *Barlett* the Court stated, "A finding of liability is a prerequisite to a finding of damages" and

that "a determination of damages cannot survive independent of the accompanying determination of liability." *Id.* at 403. *Barlett* is distinguishable from this case in that there was only one defendant potentially liable. Where that defendant was determined not to be liable, a determination of damages could not survive independently. Thus, the finding of liability and damages was reversed. By contrast, no more than 20% of the fault here was inappropriately attributed.

In accordance with *Kibbons,* we conclude that plaintiff's total damages are fixed at $5,258,000. A retrial is ordered to allocate the 20% of fault previously attributed to Farmer, Rumble, and Bruce. The jury will be instructed to allocate fault as follows: at least 70% but no more than 90% shall be attributed to defendant Bunch; not more than 20% may be attributed to defendants Farmer, Bruce and Rumble; at least 10% but no more than 30% to plaintiff McHaffie; and the three percentages must total 100%.

### III.

Point II of the Farmer, Bruce and Rumble brief relates to limitations on cross-examination of an expert called by plaintiff with regard to the negligent entrustment claim. Since that claim will not be considered on retrial, no purpose would be served by addressing the claim here. Similarly, Points III and IV have to do with allegedly improper instructions given regarding the contributory fault of Farmer. We need only point out that there was sufficient evidence to support an assessment of fault to Farmer.

■ A motorist has a duty to stop, swerve, slacken speed or sound a warning when he or she knows or by the exercise of the highest degree of care could have known that there was a reasonable likelihood of collision in sufficient time to take such preventive measures. *Jefferies v. Saalberg,* 448 S.W.2d 288, 291 (Mo.App.1969). If reasonable minds could differ as to when a driver knew or could have known of a reasonable likelihood of collision, the question of when the duty arises to take evasive action is for the jury. *See Myers v. Karchmer,* 313 S.W.2d 697, 704 (Mo.1958); *Moore v. Middlewest Freightways,* 266 S.W.2d 578, 583

(Mo.1954); *Kuehle v. Patrick,* 646 S.W.2d 845, 848 (Mo.App.1982). Furthermore, a driver has a duty to keep a careful lookout for approaching vehicles with sufficient care to appreciate and apprehend the danger of going on without taking precautionary measures. *Young v. Grotsky,* 459 S.W.2d 306, 310 (Mo.1970).

■ The evidence here, viewed in a light most favorable to the plaintiff, indicates that Farmer had driven more than the time permitted by the Department of Transportation on the date of the collision. As a result, he may have been fatigued. The jury might infer that the fatigue affected Farmer's attention and reactions. There was also evidence that Farmer could have brought his truck to a complete stop in 286.37 feet. The evidence also indicated that when the Bunch vehicle first dipped into the median, 701.97 feet existed between Farmer and the gouge marks in the highway where the impact occurred. When the Bunch car entered into the median the second time, 430.78 feet existed between Farmer and the gouge marks. When the Bunch car entered the westbound lanes after its second entry onto the median, 309.12 feet existed between the truck and the gouge marks. Such evidence supports a conclusion that Farmer was inattentive and failed to keep a lookout for approaching vehicles or that had he been properly observant, he could have stopped his vehicle in time to avoid the collision at any of the three points. Thus, there was sufficient evidence to support a submission of negligence as to Farmer.

### IV.

In Point VI of their brief, defendants Rumble, Bruce and Farmer argue that the trial court erred in permitting McHaffie's treating physician to testify as an expert regarding the side effects of a medication being taken by Farmer though not disclosed as an expert for that purpose. Because a new trial is being ordered on the question of Farmer's negligence, the issue may not recur and need not be decided.

## V.

Under Point VII the defendants, Rumble, Bunch, and Farmer, argue that one juror, Catherine Porter, failed to disclose during *voir dire* that her daughter had been injured in an automobile accident and an assault. Point VIII complains that the court refused to grant an evidentiary hearing regarding the alleged nondisclosure.

By way of affidavit filed in support of defendant's motion for new trial, juror Porter disclosed that in 1973, her daughter, who was then living with her, was involved in a serious automobile accident and received facial lacerations. She asserts she did not respond to any of the questions because she had attempted to "block it out of my mind and did not think it was the type of accident" similar to the *McHaffie* case. She further indicated that the events had occurred nineteen years earlier and that many other traumatic events had intervened, including the daughter's marriage, an annulment, and a later incident where the daughter was robbed, had her throat cut and was strangled to unconsciousness. The assault was more than seven years prior to the trial.

 Nondisclosure can occur only after a clear question is asked on voir dire. *Brines v. Cibis,* 882 S.W.2d 138, 139 (Mo. banc 1994). Unintentional nondisclosure exists where the experience is insignificant, remote in time or when the venireperson reasonably misunderstands the question. *Williams v. Barnes Hosp.,* 736 S.W.2d 33, 36 (Mo. banc 1987). If nondisclosure is unintentional, a new trial is not mandated where the information not disclosed does not bear on the case or on the prospective juror's ability to fairly evaluate the evidence. *Id.* at 37.

### A.

 The venire was asked if "you on the panel" had been involved in automobile accidents, if "anyone on the panel" had experienced long periods of pain and suffering, and if "anyone" had to undergo physical, mental or emotional rehabilitation. The panel was asked if anyone on the panel or "those close to you in close life experience . . . ever had a closed head injury" and whether "someone close to you with that experience . . . would cause you to identify with or favor" the plaintiff. The venire was also asked if anyone on the panel had ever been required to provide care for somebody who was seriously ill or injured. Juror Porter did not respond to these questions.

The venirepersons were asked about involvement in making a claim against another individual. Defendants claim Porter should have disclosed that her daughter received a voluntary settlement after the car accident when the following question was asked, "Have any of you been involved in making a claim against another individual, filing a lawsuit? Have you consulted with a lawyer or actually filed a lawsuit?" The question defines "claim" by "filing a lawsuit" and appears to be addressed to suits involving venirepersons rather than family members. According to Porter's affidavit, no lawsuit or charges were filed regarding the accident and the daughter received a settlement. The quoted questions did not inquire of Porter regarding family members who had made claims against other individuals and, thus, did not require a response. As to this question, there was no failure to disclose.

The only specific questions which might have evoked a response from juror Porter were the following, "Is there anyone on the panel who is either now or in the past been required to provide care for someone who is seriously ill or seriously injured?" and "Is there anyone who has ever had to undergo physical, mental or emotional rehabilitation?" As to the first question, there was no indication in Porter's statement that she was "required to provide" any special care for her daughter after the car accident or the assault. The closest she came to that was that she spent three weeks with the daughter after the assault "helping her to put that experience behind her." As to the second question, Juror Porter indicated she had undergone emotional counseling on one occasion and was told she was "just fine." This single visit could hardly be characterized as undergoing "emotional rehabilitation." The *voir dire* questions were not sufficiently clear as to require juror Porter to make disclosure. Assuming, *arguendo,* that the questions were clear, the events were sufficiently remote in

time as to justify a finding that the nondisclosure was unintentional and that the events surrounding the daughter's automobile accident and assault did not color her ability to fairly hear the case.

### B.

 Defendants further argue that the refusal of the trial court to grant an evidentiary hearing was reversible error, citing *Peth v. Heidbrier*, 789 S.W.2d 859, 862 (Mo. App.1990), and *Knothe v. Belcher*, 691 S.W.2d 297, 298–99 (Mo.App.1985). In *Peth* the plaintiff filed a motion unsupported by affidavits and subpoenaed witnesses to testify. The trial court denied a motion for an evidentiary hearing. This was determined to be error. In *Knothe* the plaintiff's motion for retrial alleged that a defendant had conversed with one of the jurors during a recess. That defendant filed his own affidavit in which he did not deny the conversations but stated that no conversations had occurred "relating to my case." 691 S.W.2d at 298. Jurors were not permitted to be called as witnesses and no affidavits were filed by plaintiff. Neither of those cases involved a situation such as that existing here where there was a detailed affidavit and statement submitted from the juror in question, affidavits of other jurors were submitted, and an opportunity allowed for the parties to file additional affidavits regarding the juror nondisclosure issue.

Rule 78.05 contemplates that while depositions and oral testimony may be presented in connection with an after-trial motion, the rule does not require an evidentiary hearing where the affidavits or stipulated facts are sufficient for the court to make a decision. Although given an opportunity to do so, the defendants point to no additional facts that might have been presented had live testimony been permitted. Under the circumstances, there is no abuse of discretion in the trial court's decision to determine the jury nondisclosure issue without an evidentiary hearing.

### VI.

In the last point presented by Rumble, Bruce and Farmer and in the third point presented in Bunch's brief, it is claimed that the trial erred in awarding plaintiff prejudgment interest on the amended judgment of May 20, 1992. Since the amount of the judgment against the defendants is as yet undetermined, and indeed there may be no judgment entered against Rumble, Bruce and Farmer on retrial, it is not appropriate to address this issue.

### VII.

In the first point of Bunch's brief, she argues the trial court erred in permitting evidence of and references regarding her consumption of alcohol on the evening of the collision because the prejudicial effect of such evidence outweighs its probative value and no proper foundation for such evidence was presented.

An objection to the admissibility of Bunch's consumption of alcohol was raised by a motion *in limine*. No objection was made during the testimony of the highway patrol officer. However, at the end of the testimony of the officer, Bunch's counsel moved to strike the testimony concerning the amount of beer consumed by Bunch because the information had been elicited in violation of the "Sunshine Law," § 610.100, et seq., RSMo Supp.1993.

 A party who fails to object to testimony at trial fails to preserve the issue for appellate review. *Williams v. Enochs*, 742 S.W.2d 165, 168 (Mo. banc 1987). A party is not permitted to advance on appeal an objection different from that stated at trial. *Wilson v. Shanks*, 785 S.W.2d 282, 285 (Mo. banc 1990). Bunch did not timely raise the objections argued here and, thus, those are not preserved for appellate review.

 Nevertheless, *ex gratia* review for plain error indicates that defendant Bunch is entitled to no relief. Evidence of a driver's drinking alcohol is admissible if it is coupled with evidence of erratic driving or "any other circumstance from which it might be inferred that defendant had an impaired physical condition at the time of the collision." *Doisy v. Edwards*, 398 S.W.2d 846, 849–50 (Mo.1966).

■ Here eyewitnesses observed Bunch's vehicle pass another, fishtail, weave a little bit, and dip into the median once, return to the highway again and then cross the median. The roadway was free of ice and snow. Such evidence, coupled with evidence of her recent consumption of beer and that she smelled of intoxicants after the accident, is sufficient to create an inference of impairment.

### VIII.

While Bunch was initially arrested for DWI, no charges were filed within thirty days. When a charge was filed some seven months later, Bunch was charged with and pleaded guilty to careless and imprudent driving.

Bunch's second point argues that the trial court erred in allowing Farmer, Bruce and Rumble to present evidence of the content of the criminal information filed against Bunch for careless and imprudent driving relating to the operation of her vehicle at the time of the accident. Bunch also argues that the trooper, Corporal Wolters, who investigated the accident, should not have been allowed to use a handwritten statement he made regarding the accident to refresh his recollection. She argues that both the criminal information and the statement were "contained" in the original arrest record of Bunch and, as such, were closed.

■ Missouri's "Sunshine Law," § 610.100, provides in part:

If any person is arrested and not charged with an offense against the law within thirty days of his arrest, official records of the arrest and of any detention or confinement incident thereto shall thereafter be closed records except that the disposition portion of the record may be accessed for purposes of exculpation and except as provided in § 610.120.

Section 610.120 makes the records available for certain purposes, none of which is pertinent here.

Bunch misapprehends the nature of the report of Cpl. Wolters. Whether an arrest occurs or not, law enforcement officers investigating a vehicle accident resulting in injury or death have a duty to prepare a written report of the investigation either at the time of and at the scene of the accident or thereafter by interviewing the participants or witnesses, and officers are required to file that report in a timely fashion. § 43.250. The officer's testimony makes clear that his purpose for interrogating Ms. Bunch and preparing the statement was not only for the purpose of making an arrest for DWI but "to go along with the accident report itself and try to make sure I had the information for that report." Nothing in § 610.100, *et seq.,* makes accident reports or notes taken in anticipation of such a report closed records. Where, as here, the interview occurs for such dual purpose, the notes made during the investigation of an accident do not become a part of the arrest records making them subject to the provisions of § 610.100. This claim is denied.

Neither was the information filed with the court in the misdemeanor prosecution an arrest record. Rather, it is a court record and is closed only if the charge is "nolle prossed, dismissed, or the accused is found not guilty or imposition of sentence is suspended." § 610.105, RSMo Supp.1993. In this case, Bunch pled guilty and was sentenced. A plea of guilty is an admission of the facts alleged in the information. *State v. Armstrong,* 433 S.W.2d 270, 272 (Mo.1968). The information to which she pled guilty alleged Bunch "fail[ed] to maintain control of her vehicle by driving with a blood-alcohol concentration of at least .05 and by driving off the main roadway and into the opposite lanes of traffic." An admission of those facts by Bunch is highly relevant to the issues in this case. No error occurred in permitting evidence of the content of the information.

### IX.

■ In McHaffie's cross-appeal, she asserts that the trial court erred in giving a comparative fault instruction because the instruction was not supported by substantial evidence. The instruction required the jury to assess a percentage of fault to McHaffie if the jury found:

First, at the time plaintiff Laura L. McHaffie remained in the automobile, de-

fendant Cindy D. Bunch was intoxicated to the extent that her driving ability was impaired; and,

Second, plaintiff Laura L. McHaffie remained in the automobile knowing that defendant Cindy D. Bunch was in such an intoxicated condition; and

Third, plaintiff Laura L. McHaffie was thereby negligent; and

Fourth, such negligence and the impaired driving ability of defendant Cindy D. Bunch directly caused or directly contributed to cause any damage plaintiff Laura L. McHaffie may have sustained.

Viewed in a light most favorable to the submission, the evidence here shows the following:

Bunch testified that she did not recall how much beer she drank that evening but that she drank it within a two hour period. She admitted to drinking two beers from a six-pack her group shared in the car before arriving at a bar in Pittsburg, Kansas. Bunch's group consumed two pitchers of beer at the bar. An accident reconstruction expert testified that Bunch was driving 75.55 miles per hour when she went off the road. When Bunch drove across the median, there was no traffic around her and the roadway was free of ice and snow. Officers at the scene of the accident detected a moderate to strong odor of alcohol from Bunch and noticed that Bunch was slow to formulate answers and that her speech was slurred. An officer trained in detecting drivers who are intoxicated was of the opinion that Bunch was under the influence of alcohol immediately following the accident. Finally, the evidence was clear that McHaffie was with Bunch throughout the evening.

McHaffie argues first that the evidence was insufficient to establish intoxication and second, it was insufficient to show actual knowledge of Bunch's impaired driving ability due to intoxication. Clearly, the evidence was sufficient to show that intoxication impaired Bunch's ability to drive. McHaffie's knowledge of that condition may be inferred from her presence with Bunch throughout the evening. Evidence of a particular mental state is rarely available and proof is usually provided by circumstantial evidence and per-

missible inferences. *State v. Harris,* 825 S.W.2d 644, 647 (Mo.App.1992). It is a question for the jury "whether the guest passenger knew or should have known of the extent of [the driver's] impairment." *Miller v. Eaton,* 733 S.W.2d 31, 34 (Mo.App.1987).

### CONCLUSION

From what has been said, the Court concludes that the judgment as to the amount of damages is affirmed. The assessment of fault is reversed and the cause is remanded to the trial court with directions to retry the issues of apportionment of fault consistent with this opinion.

All concur.