JUSTICE GABRIEL,
dissenting.
¶59 I agree with the majority’s conclusion that the district court did not abuse its discretion in denying Ferrer’s motion for leave to amend her complaint to add a demand for exemplary damages. Maj. op. ¶ 57. I disagree, however, with the majority’s conclusion that the district court properly dismissed Ferrer’s claims against the Colorado Cab Company for negligence, negligent entrustment, negligent hiring, negligent retention/supervision, and negligent training (“direct liability claims”) because the cab company conceded vicarious liability for the negligence of its driver, Okbamicael, and therefore, Ferrer’s direct ’ liability claims became duplicative and unnecessary. Id. at ¶ 50. In my view, the majority has greatly expanded the rule articulated in McHaffie v. Bunch, 891 S.W.2d 822, 826 (Mo. 1995), which the majority purports to adopt and apply, because in applying that rule, the majority implicitly, but incorrectly, assumes that the direct liability claims against the cab company were imputed liability claims, rather than separate and independent negligence claims. In addition, the majority has overlooked what I believe to be a significant conflict between its ruling and the application of comparative fault principles in cases like this one. See maj. op. at ¶¶ 35-40. And the majority’s ruling endorses pleading practices that I believe improperly allow a defendant to manipulate a plaintiffs well-pleaded complaint to the defendant’s significant advantage.
¶60 For each of these reasons, I respectfully dissent.
I. Analysis
¶61 I first address what the majority calls the “McHaffie rule” and explain why the majority’s ruling, which incorrectly assumes that Ferrer’s claims against the cab company were derivative in nature, greatly expands that rule. I then discuss why I believe that the majority’s ruling is inconsistent with our comparative fault regime. I end by expressing my concern regarding the ramifications that this ruling will have on pleadings practice in Colorado.
A. The “McHaffie Rule”
¶62 As the majority observes, maj. op. ¶¶ 24-25, several cases have articulated, as a purported “majority view,” that once an employer admits liability for an employee’s negligence under a respondeat superior theory, a plaintiff may not proceed against the employer on any other theory of imputed liability. See, e.g., Connelly v. H.O. Wolding, Inc., No. 06-5129-CV-SW-FJG, 2007 WL 679885, at *2 (W.D. Mo. Mar. 1, 2007); McHaffie, 891 S.W.2d at 826. The majority deems such cases persuasive and applies them to affirm the district court’s dismissal of Ferrer’s direct liability claims against the cab company. See maj. op. ¶¶ 26, 48-51. In so holding, the majority asserts that when the cab company conceded its vicarious liability for the driver’s conduct, the direct liability claims against the cab company became duplicative and unnecessary. Id. at ¶ 50. For several reasons, I disagree.
¶63 First, what the above-noted cases and the cab company deem the “majority view” (and what the majority calls the “McHaffie rule”) is not as well established or universally followed as the cases and the cab company suggest. In James v. Kelly Trucking Co., 377 S.C. 628, 661 S.E.2d 329, 332 (2008), for *851 example, the South Carolina Supreme Court rejected the rule that the majority adopts here, concluding that South Carolina law does not prohibit a plaintiff from pursuing direct negligence claims against an employer that has admitted respondeat superior liability. In reaching this conclusion, the court observed:
Just as an employee can act to cause another’s injury in a tortious manner, so can an employer be independently liable in tort. In circumstances where an employer knew or should have known that its employment of a specific person created an undue risk of harm to the public, a plaintiff may claim that the employer was itself negligent in hiring, supervising, or training the employee, or that the employer acted negligently in entrusting its employee with a tool that created an unreasonable risk of harm to the public. As this recitation suggests, the employer’s liability under such a theory does not rest on the negligence of another, but on the employer’s own negligence. Stated differently, the employer’s liability under this theory is not derivative, it is direct.
Id. at 330-31 (citations and footnote omitted).
¶64 The court further stated:
In our view, the argument that the court must entirely preclude a cause of action to protect the jury from considering prejudicial evidence gives impermissibly short-shrift to the trial court’s ability to judge the admission of evidence and to protect the integrity of trial, and to the jury’s ability to follow the trial court’s instructions.
Id. at 331.
¶65 And the court opined:
In our view, it is a rather strange proposition that a stipulation as to one cause of action could somehow “prohibit” completely the pursuit of another. A plaintiff may, in a single lawsuit, assert many causes of action against a defendant. The considerations limiting a plaintiffs available causes of action in the typical case are that the plaintiff must be able to demonstrate a prime [sic] facie case for each cause of action and that a plaintiff may ultimately recover only once for an injury.
Id. at 332.
¶66 Other courts have reached similar conclusions, with several observing that what the cab company deems the “majority rule” (and what the majority calls the “McHaffie rule”) is not, in fact, followed by the majority of courts; rather, the courts are split on the question presented here. See, e.g., Wright v. Watkins & Shepard Trucking, Inc., 972 F.Supp.2d 1218, 1220-21 (D. Nev. 2013) (rejecting the “majority approach” and following James); Fairshter v. Am. Nat’l Red Cross, 322 F.Supp.2d 646, 654 (E.D. Va. 2004) (noting that under Virginia law, claims of respon-deat superior and claims of negligent hiring may proceed in the same action); Marquis v. State Farm Fire & Cas. Co., 265 Kan. 317, 961 P.2d 1213, 1222 (1998) (noting that claims for negligent supervision, hiring, and retention are “negligence separate and distinct from negligence of the driver whose action caused the injury”); MV Transp., Inc. v. Allgeier, 433 S.W.3d 324, 335-36 (Ky. 2014) (following James and adopting the “non-preemption rule”); Jones v. Windham, No. W2015-00973-COA-R10-CV, 2016 WL 943722, at.*3-5 (Tenn. Ct. App. Mar. 11, 2016) (describing jurisdictions as “fairly even[ly] split” on the question of whether a plaintiff may proceed with a direct negligence claim against an employer that has admitted vicarious liability and holding that “an employer’s admission of vicarious liability does not bar a plaintiff from proceeding against the employer on independent claims of negligence”), cert. granted, (Tenn. Aug. 19, 2016).
¶67 I am persuaded by the reasoning of these cases, and particularly the reasoning of James, and I would follow that reasoning here.
¶68 Second, even were I to agree that we should adopt the “McHaffie rule,” in my view, it does not apply here.
¶69 As noted above, the “McHaffie rule” bars only those claims against the employer that are based on other theories of imputed liability. See, e.g., Connelly, 2007 WL 679885, at *2; McHaffie, 891 S.W.2d at 826. The cab company’s alleged liability in this case, however, is not imputed (or derivative) but di *852 rect. Accordingly, notwithstanding the majority’s assertions to the contrary, see maj. op. ¶¶ 31, 50, the direct liability claims against the cab company are not duplicative of Ferrer’s other claims, nor would the evidence supporting the direct liability claims serve only to establish the cab company’s liability for damages aidsing from the driver’s acts. To the contrary, such evidence would be offered to establish the cab company’s liability for damages aidsing from its own acts. See James, 661 S.E.2d at 331; see also 1 Stuart M. Speiser, Charles F. Krause & Alfred W. Gans, The American Law of Torts § 4:10 at 639-40 (2003) (noting that the liability of an owner or bailor for negligent entrustment “does not rest on imputed negligence, but rather is based on his or its own negligence in entrusting the automobile or other instrumentality to an incompetent operator,” and thus concluding that “[t]he issue of the owner’s or bailor’s negligence in entrusting is ... independent from the preliminary issue of the driver’s or operator’s negligence”) (footnote omitted).
¶70 In addition, as the majority observes, a number of cases have recognized an exception to the “McHaffie rule” when a plaintiff properly alleges willful and wanton conduct justifying an award of exemplary damages. See maj. op. ¶ 43. Although the majority rejects these cases, see id. at ¶ 44, the cases actually illustrate the limitations of the rule that the majority purports to adopt—and they show why claims like those at issue here should be allowed to proceed.
¶71 Specifically, in each of these cases, the court recognized that when direct negligence claims arise from willful and wanton conduct, those claims impose additional liability on parties also alleged to be vicariously liable. Accordingly, in such circumstances, the direct negligence claims are not duplicative of the imputed liability claims, and the willful and wanton tortfeasors should not be excused from liability for their conduct, as the majority’s ruling would allow. See, e.g., Clooney v. Geeting. 352 So.2d 1216, 1220 (Fla. Dist. Ct. App. 1977) (noting that if a theory of liability such as negligent hiring, employment, or entrustment would impose additional liability, as, for example, if the allegations supported a claim for punitive damages, then such a claim could proceed, notwithstanding a claim for vicarious liability, because the negligent hiring, employment, or entrustment claims would not merely allege concurrent theories of recovery); Plummer v. Henry, 7 N.C.App, 84, 171 S.E.2d 330, 334 (1969) (“[T]he plaintiff has not only alleged liability of the owner-defendant for compensatory damages on the negligent entrustment theory, but has further alleged facts which, if proved, would justify an award of punitive damages against the owner for his own wanton negligence.”); Arlington’s Estate v. Fields, 578 S.W.2d 173, 179 (Tex. Civ. App. 1979) (noting that when a plaintiff has alleged ordinary negligence against the driver and gross negligence against the owner for entrusting the vehicle to a reckless or incompetent driver, courts have recognized that the negligent entrustment cause of action would be “an independent and separate ground' of recovery against the owner for exemplary damages”).
¶72 In my view, these cases demonstrate that the rule that the majority purports to adopt is not as expansive as the majority states but rather applies only when direct and imputed liability claims are, in fact, du-plicative. When, however, such claims are separate and independent (e.g., when, as here, the direct liability claims are not imputed liability claims), then both sets of claims should be allowed to proceed because both the negligence of the employee and the independent negligence of the employer contributed to the plaintiffs injury. To hold otherwise would allow an alleged tortfeasor like the cab company to escape responsibility for independent and direct negligence that the injured plaintiff might ultimately be able to prove at trial.
173 Accordingly, even if the “McHaffie rule” could apply in this ease, by its own terms, it is inapplicable on the present facts, and the majority’s application of that rule in this case substantially expands the rule.
¶74 For these reasons alone, I respectfully disagree with the majority’s conclusion that the cab company’s admission of vicarious liability bars Ferrer’s direct liability claims as a matter of law.
*853 B. Comparative Negligence
¶75 In concluding that the cab company’s admission of vicarious liability bars Ferrer’s direct liability claims against the cab company, the majority also overlooks what I believe to be a significant conflict between its ruling and the application of comparative fault principles in eases like this one. For this reason as well, I cannot agree with the majority’s analysis.
¶76 Colorado’s comparative fault and non-party-at-fault statutes task the factfinder with determining the degree of negligence of each party and of any properly designated nonparties. See §§ 13-21-111, 13-21-111.5, C.R.S. (2016). The plaintiffs recovery is then reduced in proportion to the amount of negligence attributable to the plaintiff himself or herself. See § 13-21-111(1), (3). If, however, the plaintiffs proportionate fault is equal to or greater than that of the defendant, then the plaintiff recovers nothing. See id.
¶77 In my view, allowing the cab company to manipulate the pleadings in this case so as to eliminate the direct liability claims against it and to collapse those claims into the negligence claims against the driver undermines the foregoing comparative fault regime. An example well illustrates this point.
¶78 If the direct liability claims against the cab company remain in the case and the jury apportions liability equally among Ferrer, the driver, and the cab company, then Ferrer would recover two-thirds of the damages that she is able to prove (because she would be one-third at fault and the driver and cab company, collectively, would be two-thirds at fault).
¶79 If, conversely, the direct liability claims against the cab company are dismissed and those claims are permitted to “collapse into” the claims against the driver, then it appeal’s that the jury would effectively weigh only Ferrer’s fault, on the one hand, and the driver’s fault, on the other. See Watson v. Reg'l Transp. Dist., 762 P.2d 133, 139-40 (Colo. 1988) (noting that the doctrine of vicarious liability stems from considerations other than the defendant’s individual fault and thus rejecting a rule of imputed comparative negligence); Kussman v. City & Cty. of Denver, 706 P.2d 776, 784 (Colo. 1985) (Neighbors, J., concurring) (“[T]he negligence of persons in an imputed negligence relationship' ought to be treated as a unit, whether they are plaintiffs or defendants, for purposes of comparative negligence.”); see also Laubach v. Morgan, 588 P.2d 1071, 1074 n.13 (Okla. 1978) (noting that in the context of imputed or vicarious liability, “negligence of two or more tortfeasors is treated as a unit, so that so far as the comparative negligence doctrine is concerned it is the same as if only one defendant is involved”). In this scenario (i.e., .the direct liability claims against the cab company are dismissed and those claims are permitted to “collapse into” the claims against driver), if the jury finds the parties equally at fault, then it would apportion fifty percent fault to Ferrer and fifty percent fault to the driver, which would prevent Ferrer from recovering anything. See § 13-21-111(1), (3).[1]
¶80 In my view, such a result would be contrary to both the letter and spirit of the comparative fault principles codified in Colorado’s comparative fault statute because it would potentially allow negligent parties to evade an apportionment of liability to them by means of creative pleading. I cannot countenance such a result,
¶81 Notwithstanding the foregoing anomalies, the majority asserts that allowing direct negligence claims to proceed after an employer has acknowledged its vicarious liability raises a concern that a plaintiff may (apparently tactically) allege additional direct negligence claims against the employer to convince a jury that he is less at fault than he actually is. See maj. op. ¶ 39. This, in turn, *854 would presumably, albeit inappropriately, allow a plaintiff to overcome section 13-21-111’s bar on damages for plaintiffs who are more than fifty percent at fault. See id. For three reasons, I am not persuaded.
¶82 First, this argument turns the purpose of comparative negligence on its head. “The purpose of comparative negligence is to apportion negligence among those who caused harm.” Nat’l Farmers Union Prop. & Cas. Co. v. Frackelton, 662 P.2d 1056, 1059 (Colo. 1983); accord Alhilo v. Kliem, 2016 COA 142, ¶ 69, — P.3d-. Removing a potentially liable tortfeasor from the comparative negligence calculus, however, would prevent a jury from apportioning negligence among all responsible parties.
¶83 Second, unlike the majority, I do not perceive how including a potentially liable tortfeasor in the comparative fault equation would somehow allow a plaintiff to avoid its own liability. To the contrary, including all potentially responsible parties in the calculation would allow the jury to allocate the proper degree of fault to each responsible party, including the plaintiff, just as the comparative fault regime envisions. In contrast, excluding a potentially liable tortfeasor from the equation would increase the risk that a jury would apportion an unjustifiably greater percentage of fault to the plaintiff (because the jury would have fewer parties among whom to apportion liability). This, in turn, would increase the defendant’s chances of having a jury apportion fifty percent or more of the liability to the plaintiff, thereby relieving the defendant of liability. See § 13-21-111(1), (3). ’
¶84 Third, I find the majority’s concern for possible litigation tactics by a plaintiff arising from comparative fault principles, see maj. op. ¶ 39, somewhat ironic, given that, as I explain below, this case reflects a defendant’s use of litigation tactics to manipulate a plaintiffs well-pleaded complaint to its significant advantage.
¶85 Accordingly, I believe that the majority’s ruling is contrary to settled principles of comparative fault.
C. Pleadings Practice
¶86 Finally, in my view, the majority’s ruling endorses the very type of manipulative pleadings practice that the majority purportedly seeks to avoid.
¶87 It is undisputed that the cab company’s contract with the driver provided that the driver was an independent contractor and not an employee. Consistent with that, the cab company initially denied that the driver was an employee and affirmatively asserted that he was an independent contractor.
¶88 Apparently later discovering the case law discussed above, which the cab company claims—and the majority now agrees—bars direct liability claims against an employer that has conceded its vicarious liability, the cab company sought to amend its answer to admit, “for purposes of this case only,” that at the time of the accident, the driver operated the taxi within the course and scope of his employment.
¶89 The district court allowed this amendment, which provided the cab company with a defense that it did not have previously, and then granted the cab company’s motion to dismiss Ferrer’s direct liability claims, thereby precluding her from obtaining certain otherwise discoverable information. Unlike the majority, for several reasons, I cannot endorse such creative pleading practices.
¶90 First, I am troubled that the cab company’s admission of its vicarious liability (1) was inconsistent with its own contract and with its prior admissions and (2) appears to have no factual basis. I am likewise troubled that the district court appears to have disregarded these fundamental flaws in the cab company’s argument, despite the court’s own observation that the cab company’s contract stated that the driver was an independent contractor.
¶91 Second, the majority’s ruling allows a defendant to manipulate a plaintiffs pleadings to its significant advantage, contrary to the settled principle that the plaintiff is the master of the complaint and has the right to determine the facts that he or she will allege and the claims that he or she will pursue. See Holmes Grp., Inc. v. Vornado Air Circulation *855 Sys., Inc., 535 U.S. 826, 831, 122 S.Ct. 1889, 153 L.Ed.2d 13 (2002) (noting that the plaintiff is “the master of the complaint”); see also C.R.C.P. 8(a) (providing that a claimant may seek relief in the alternative or of several different types); C.R.C.P. 18(a) (providing that a party asserting a claim for relief “may join, either as independent or as alternate claims, as many claims, legal or equitable, as he has against an opposing party”); C.R.C.P. 20(a) (“All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action”).
¶92 As the South Carolina Supreme Court aptly observed in James, 661 S.E.2d at 332, “[I]t is a rather strange proposition that a stipulation as to one cause of action could somehow ‘prohibit’ completely the pursuit of another,” particularly given that a plaintiff may assert multiple causes of action against a defendant in a single lawsuit. See also C.R.C.P. 8(a) (allowing a claimant to seek relief in the alternative or of several different types).
¶93 I fully agree with the James court’s observation. Trial practice is not—and should not be—a game. Nor should this court reward creative pleading practices that make it so. I fear that we have done just that today.
II. Conclusion
¶94 For these reasons, I respectfully dissent.
I am authorized to state that CHIEF JUSTICE RICE and JUSTICE HOOD join in this dissent.

. At oral argument, counsel for the cab company initially appeared to agree with this proposition but then suggested that the jury would still consider the fault of both the driver and the cab company. It is not clear to me why this would be the case, and the case law cited above suggests otherwise. See Watson, 762 P.2d at 139-40; Kussman, 706 P.2d at 784 (Neighbors, J., concurring); Laubach, 588 P.2d at 1074 n.13. Moreover, this argument seems to run contrary to the premise of the cab company’s position in this case, namely, that an admission of vicarious liability results in the cab company's taking responsibility for the driver's negligence in exchange for being relieved of any liability for its own direct negligence.